BENKERT, Appellant, vs. GRUENEWALD, imp., Respondent.

*October 14—November 10, 1936.*

For the appellant there was a brief by *Burmeister & Snodgrass* of Monroe, and oral argument by *Philip N. Snodgrass* and *Ray F. Burmeister.*

For the respondent there was a brief by *J. M. Fitzgibbons* of Monroe, and oral argument by *Mr. Oscar T. Toebaas* of Madison, and *Mr. Fitzgibbons.*

WICKHEM, J.  On February 1, 1919, plaintiff and defendant Jacob J. Gruenewald entered into a written agreement for the sale of a farm and the personal property thereon.  The agreed price was $72,000, of which $15,000 represented the purchase price of the personal property.  Shortly thereafter, defendant received a deed and took possession of the farm, making a down payment of $24,500, and executing to plaintiff a note in the sum of $47,500, securing it by a first mortgage on the farm.  Defendant entered possession of the premises, and during the years 1920 to 1927, inclusive, defendant paid to plaintiff a total of $19,000 in interest.  This was $1,800 less than the total interest payable during that period.  In March, 1928, defendant paid no interest and apparently it became evident to the parties that defendant could not pay the debt.  Accordingly, in March of that year plaintiff and defendant entered into a new agreement.  Defendant deeded the premises to plaintiff, and plaintiff leased the farm to defendant for one year for $1,000 rental with an option to the defendant to repurchase under land contract for $39,000 in the event defendant made an additional payment to plaintiff of $5,000 by March 1, 1929.  The defendant paid the $1,000 rental and also the $5,000 required to exercise his option, whereupon plaintiff gave defendant the land contract now under foreclosure.  In 1930 and 1931, defendant paid the interest in full.  In 1932, defendant paid $1,200 interest.  In March, 1933, the interest for that year came due and was not paid.  It might be added that defendant, up to that time, paid all taxes and all insurance premiums required by the land contract.  In March, 1933, the parties entered into an agreement wherein it was provided in substance that plaintiff accept $800 as back interest, $850 for interest to become due in March, 1934, and that the defendant and his wife execute a deed to the farm in favor of plaintiff to be held by plaintiff as security and returned upon compliance by defendant with

all of the conditions of the agreement. These terms were complied with and the deed returned to the defendant. Thus, the obligations of the defendant up to March, 1934, were by payment either under the original or modified agreements fully taken care of. In 1934, the barn and two silos on the farm were destroyed by wind and replaced by defendant at his own expense from the proceeds of insurance maintained by him without being required to do so by the land contract. Defendant defaulted in the interest due in March, 1935, and foreclosure was started within a few weeks thereafter. Judgment of foreclosure was entered May 29, 1935.

At that time sec. 281.25 (1), Stats. 1933, read as follows:

"In any action for the foreclosure of a land contract, or for the performance of such land contract, in which judgment shall be entered prior to April 1, 1937, the court in its discretion may fix a period of redemption not to exceed one year conditioned that during such period the defendant pay the current interest or taxes, or both, in the discretion of the court."

The court granted plaintiff a judgment of strict foreclosure and gave defendant possession until February 28, 1936, and right of redemption until January 1, 1936, on condition that defendant pay the 1935 taxes to become due in 1936. This condition was complied with by defendant. Thereafter, sec. 281.25 (1), Stats., was amended by ch. 362, Laws of 1935 (effective August 14, 1935), to read as follows:

"In any action for the foreclosure of a land contract, or for the performance of such land contract, in which judgment shall be entered prior to April 1, 1937, the court in its discretion may fix a period of redemption not to exceed three years conditioned that during such period the defendant pay the current interest or taxes, or both, in the discretion of the court. This is emergency legislation."

Thereafter, defendant petitioned the court that plaintiff be required to apply for mediation in pursuance of secs. 281.203

and 281.204, Stats. 1935. In a report dated January 3, 1936, the mediation board of Green county recommended that the redemption period be extended two years, provided defendant pay the 1935 taxes and the sum of $1,000 each year, or a total of $2,000 in various instalments. Defendant thereupon applied to the court for an extension of the period of redemption under sec. 281.25 (1), Stats. 1935, and after a full hearing the court entered the order appealed from extending the period of redemption and right of possession in defendant for two years on condition that defendant pay the year's interest of $1,700 and deposit the sum of $300 with the clerk of the court to take care of one year's taxes.

Plaintiff's first contention is that sec. 281.25 (1), Stats. 1935, is unconstitutional under the doctrine of *Home Building & Loan Asso. v. Blaisdell*, 290 U. S. 398, 54 Sup. Ct. 231, 88 A. L. R. 1481, and *Hanauer v. Republic Building Co.* 216 Wis. 49, 255 N. W. 136, 256 N. W. 784. This is based upon the contention that the statute makes no attempt to satisfy the standards or criteria of reasonableness as specifically set in the *Blaisdell Case* and discussed in the *Hanauer Case;* that it does not require the rental value of the property be paid plaintiff, nor that the vendor have the equivalent or anything approaching the equivalent of the value of the actual possession of which he is deprived during the extended period.

The difficulty with plaintiff's contention is that sec. 281.25, Stats., is not the source of the court's power to fix a period of redemption in cases of strict foreclosure. The situation is quite different from that of the statutory foreclosure of mortgages. There the entire procedure is created by statute. In strict foreclosure cases, the court has always had and has always exercised, without the assistance of statute, the power to give such period of redemption as in its discretion was proper in view of the circumstances of the particular case.

See *Oconto Co. v. Bacon,* 181 Wis. 538, 195 N. W. 412; *Godwin v. Miller,* 199 Wis. 497, 226 N. W. 954; *Security State Bank v. Monona Golf Club,* 213 Wis. 581, 252 N. W. 287.

The statute may operate, (1) as a legislative declaration that in view of the emergency, the period of redemption may in the court's discretion under certain circumstances be as long as three years (a substantially longer period than has so far been sustained as within a trial court's discretion); or (2) as a proviso that the extreme limits of the period shall be those fixed by the act and that relief shall always be conditioned as specified in the act. The act neither authorizes nor compels the granting of any particular period of redemption, but vests the whole matter within the discretion of the court where it always has been without statute. Hence, we see no profit in a consideration of the constitutional point. Whether the statute be applied or whether the court act within its own equitable powers, the queston will always be whether it abused its discretion in so doing.

It is the contention of plaintiff that the court did abuse its discretion in entering this order. The facts which we deem decisive upon this contention are: First, that the defendant by his own admission is hopelessly insolvent; and, second, that upon all the testimony the farm is worth substantially less than the unpaid purchase price due. The insolvency of the defendant is admitted by him. His testimony is to the effect that his debts, aside from the principal sum due on the land contract, total $19,750. The personal property on the farm according to his appraisal is worth $6,500. He has no other property, nor upon any of the testimony adduced in the hearing has he any equity in the farm. Thus, leaving entirely out of consideration his obligations upon the land, he is, as he admits, hopelessly insolvent. As to the farm itself, defendant's testimony is that it is worth $19,000. The mediation board put its value at not more than $25,500,

and one of the members of the board gave his opinion that $22,000 represented its value. Its value was set at $20,000 for purposes of a federal loan and a commitment of $9,000 for a first mortgage and $4,500 for a second mortgage was made, and later increased to $10,000 on the first mortgage and $7,500 on the second. The commitment provided that it was to pay the entire indebtedness, including that upon the personal property.

The principal sum owed is $34,000, to which must be added upwards of $1,000 more which defendant will owe in interest at the end of the two-year period of redemption. Thus, if defendant, presently insolvent, is permitted to remain in possession of the farm, the record discloses no prospects, (1) of his being able to pay the $34,000 and accrued interest which will be due at that time; or (2) to refinance in such a way as to meet this obligation.

The situation here is not that presented upon a statutory mortgage foreclosure where there will be a sale and where there may be a deficiency judgment or surplus. In such a case extension of the period of redemption may be effective to protect against a sale at a depressed price and a consequent loss of the mortgagor's equity or entry of a deficiency judgment. In strict foreclosure, however, the debtor must produce and pay the full amount due before expiration of the redemption period or be forever barred of any right or title to the land. Since the balance due after the initial payment upon a land contract represents a much higher percentage of the value of the land than is usually the case with respect to mortgages, a default after the first payment on principal comes at a time when the debtor has usually a very small equity in the premises, even if the value is not depressed by some later circumstance. The prospects of refinancing on such a margin so as to pay off eighty five per cent or more of the value are extremely slight. When the land has decreased to one half or three fourths of its original value, and

the debtor is hopelessly insolvent, it is evident that an extended period of redemption will not assist the debtor to preserve an equity, and will only have the effect of depriving the creditor of possession without fair compensation to him. It cannot be held that defendant is entitled to possession for an additional two years as compensation for keeping the place in repair or in consideration of the sum that he has lost by reason of the collapse of farm prices. The function of the court in fixing the time for redemption does not include the remaking of the original contract or a redistribution of the loss between the parties. The risk of loss in value is upon the purchaser just as the chance for gain belongs to him. In connection with this, see the following cases which, while dealing with moratory statutes, are illustrative of the factors that bear upon the exercise of a court's discretion in this respect: *Youngs v. Burleson,* 274 Mich. 132, 264 N. W. 317; *Federal Land Bank of Omaha v. Wilmarth,* 218 Iowa, 339, 252 N. W. 507; *Luikart v. Graf,* 130 Neb. 736, 266 N. W. 641; *First Trust Joint Stock Land Bank v. Wylie* (Iowa), 265 N. W. 181.

Making the most favorable assumption possible for the defendant, to wit, that the court might, either by virtue of its equitable powers or in the light of the statute, take notice of the emergency and grant a period up to three years within which defendant might redeem, such a course could only properly be justified in cases where defendant had an equity and some reasonable prospect of saving it. Here defendant had no equity or prospect of acquiring one, and the record discloses no prospect of saving the property. On defendant's valuation, if the farm doubled in value during the next two years, he would still owe about as much as it was worth. If the land is presently worth as much as the mediation board found it to be worth and doubled in value during the period of redemption, it would still have to be mortgaged for nearly four fifths of its value in order to meet defendant's require-

ments.   It is further to be noted that the valuations were set as of a date nearly three years after the lowest point of the depression and after there had been some measure of recovery of farm prices and incomes.

Under these circumstances, we think the order constituted an abuse of discretion.   Whether we give the statute the most liberal construction that it is capable of, or take an equally liberal view of the extent of the court's powers and the proper limits of its discretion, it follows that the order must be reversed.

*By the Court.*—Order reversed, and cause remanded with directions for further proceedings in accordance with this opinion.