KALLENBACH and wife, Appellants, v. LAKE PUBLICATIONS, INC., Respondent.

*April 12—May 10, 1966.*

For the appellants there were briefs and oral argument by *Daniel I. D'Amico* of Cumberland.

For the respondent there was a brief by *Douglas, Omernik & Bitney* of Spooner, and oral argument by *Edward E. Omernik*.

HEFFERNAN, J. The land contract contained the clause that if the vendee "shall fail to make any of the payments of purchase money and interest . . . or fail to pay the taxes . . . this agreement shall at the option of the said parties of the first part [vendor] be henceforth utterly void . . . and all payments thereon forfeited . . . ."

Unlike the recently approved land-contract form 36, the contract in the instant case contained no acceleration clause making the whole sum due and payable in the event of a default. The trial judge held that, in the absence of a clause accelerating the entire debt, the vendee was obligated only to pay up the delinquencies as a condition for redemption from the strict foreclosure.

We cannot agree with the trial judge, for his conclusion is inconsistent with the rights of the parties under a land contract and fails to afford the remedy of strict foreclosure sought by the vendor.

By execution of a land contract, the vendee becomes the owner of the land in equity, while the vendor retains legal title to secure the balance due on the purchase price.[1] Pomeroy explains this "equitable conversion" by stating:

"In equity the vendee is regarded as the real beneficial owner, even though he has not paid the purchase price; the vendor holds the legal estate as trustee, and when the terms of the contract are complied with, he is bound to convey. Until those terms are complied with, the legal title remains in the vendor as his security; or, as it is otherwise expressed, he has a lien upon the vendee's equitable estate as security for payment of the purchase money according to the terms of the agreement."[2]

Under the terms of the contract, when a default occurs, the vendor may pursue several remedies to recoup his loss. *Oconto Co. v. Bacon* (1923), 181 Wis. 538, 543, 195 N. W. 412. He may elect to sue at law for the unpaid purchase price, a remedy not likely to be pursued unless the purchaser has other assets which may be sold to satisfy the judgment. He may sue for specific performance of the contract. Under this remedy the vendor elects to affirm the contract by having the property auctioned at judicial sale. The vendor may recover only the purchase price plus his costs and disbursements. In the event the property sells for a price in excess of the contract price, the surplus belongs to the buyer, but if a deficiency results the purchaser is liable for the deficiency.

He may declare the contract at an end, and in the event the equitable interest of the purchaser is insignificant, that equitable right under the contract may be removed in a quiet-title action as a cloud on the title of the legal owner. *Oconto Co. v. Bacon* (1923), 181 Wis. 538, 543, 195 N. W. 412.

The remedy of ejectment may also be available in cases of extreme and inexcusable default by the vendee where

---

[1] Beuscher, Farm Law in Wisconsin, p. 79.

[2] 4 Pomeroy, Equity Jurisprudence (5th ed.), p. 767, sec. 1260.

there could be no showing of any equitable right to defeat the title holder's right to immediate possession. *Britt v. Bauman* (1929), 199 Wis. 514, 226 N. W. 955. In the case of ejectment as in quiet title, the vendor elects to declare the contract at an end.

The remedy of strict foreclosure is, however, most frequently resorted to in Wisconsin. In *Taft v. Reddy* (1926), 191 Wis. 144, 210 N. W. 364, Mr. Justice ROSENBERRY referred to strict foreclosure as "one of the remedies which the vendor has when he declares the contract at an end." In a recent case the court took the approach that:

> "The foreclosure of the land contract being a proceeding in equity does not seek a forfeiture, but affirms the contract and thereby recognizes that the vendee has an equitable interest in the real estate. It treats the contract as in full force and effect. The vendor offers to perform his covenants and asks that the vendee perform his, and only in case the vendee fails to perform within a time set by the court are the vendee's rights thereunder foreclosed." *Henry Uihlein Realty Co. v. Downtown Development Corp.* (1960), 9 Wis. (2d) 620, 628, 101 N. W. (2d) 775.

However, the Wisconsin cases and writers generally explain strict foreclosure as a rescission, voiding or ending or "calling off" of the contract by the vendor. *Superior Consolidated Land Co. v. Nichols* (1892), 81 Wis. 656, 51 N. W. 878; *Oconto Co. v. Bacon, supra,* page 544; *Shenners v. Pritchard* (1899), 104 Wis. 287, 80 N. W. 458; 1942 Wisconsin Law Review, 90, 95; 1958 Wisconsin Law Review, 260, 278, 280; 1960 Wisconsin Law Review, 379, 380; Beuscher, Farm Law in Wisconsin, page 81. New real-estate form 36 uses the terminology that the vendor can declare "the contract at an end" when a default occurs. Only the *Uihlein Case, supra,* and the author of the article appearing in 6 Wisconsin Law Review (1930), 59, take the position that the action of strict foreclosure is anything but a voiding or termination of the contract. Per-

haps a more reasonable (if reason is an element of the mythological world of the doctrine of equitable conversion) explanation appears at 3 American Law of Property, p. 187, sec. 11.75:

". . . when a purchaser fails to perform as required by the contract, a vendor may in many jurisdictions obtain a decree of strict foreclosure, *i.e.*, a decree fixing an ultimate date of maturity later than that provided in the contract. If the purchaser fails to fulfill his obligations by that time, his equitable interest in the property will, without any judicial sale thereof, be barred and foreclosed and his rights under the contract terminated . . . this form of action has for its purpose not only the fixing of a date for performance if that is to occur, but, if it does not occur, cutting off all possibility of any later claim of the purchaser which would cloud the title held by the vendor . . . . on behalf of the vendee, it is generally held that the action is effective to fully liquidate and discharge the contract after the period fixed for payment has expired and that it bars any other rights of the vendor under the contract . . . ."

Whether we conceive the rationale to be that the vendor is standing on his contract and merely demanding that vendee now perform his contract on terms a court considers just or suffer the forfeiture of what he has already paid together with being foreclosed of any further rights in the land under the term of the contract, or whether the vendor by a strict foreclosure is declaring the contract void and the rights under it forfeited subject to the court of equity's allowing the vendee to have one more chance to perform under conditions that are just and equitable appears, in view of the fictions that are embedded in the law of vendor and vendee, merely tautegorical.

For all practical purposes under either theory, the vendor has in effect blown the whistle and called the game off because the vendee will not abide by the rules. The court (if it find that the equities of the vendee are not merely nominal as in *Oconto Co., supra,* and *Britt, supra)*, however, will not allow the absolute forfeiture

of the vendee's rights. The right that the vendor relies upon, when he blows the foreclosure whistle, is the right to get his land back, a right that, in a sense, the contract contemplates, since the right to the land that the vendee acquires from the vendor is forfeited by vendee's breach. The vendor by electing to use the remedy of strict foreclosure forgoes any right to collect the amount of the debt. He cannot demand the return of the land and also ask for the total purchase price. If he wishes the purchase money and not land, he must elect specific performance (judicial sale) which will give him judgment for the balance due to be paid out of the sale price or, if the proceeds are insufficient, additional judgment against the vendee for the deficiency. In this instance or where the vendor seeks a money judgment without relying on the repossession of the land, it is essential that there be a clause in the contract if the entire debt is to be accelerated. The presence or absence of an acceleration clause is, however, irrelevant where strict foreclosure is used. The foreclosure is of the vendee's rights under the contract—all of them—and to keep what he bargained for he must pay for all he bargained for. The vendor by a strict foreclosure is not asking that the past-due instalments be paid; he is asking that there be forfeiture of all of the vendee's rights unless, under terms that a court finds equitable, the vendee performs in full.

The question whether strict foreclosure triggers the redemption requirement of paying the entire contract balance or merely the past-due delinquencies appears not to have been raised heretofore in Wisconsin. However, the answer, that the entire balance is due, is implicit in the rationale of the cases.

The rationale of the Wisconsin cases has been attacked by no less renowned legal scholar than Roscoe Pound, who in referring to the seminal case on strict foreclosure in Wisconsin, *Button v. Schroyer* (1856), 5 Wis. 598, stated:

"This holding is based on the palpably fallacious argument that 'the title did not pass by the contract, but re-

mained in the vendor;' as if the title to mortgaged land were not in the mortgagee . . . Strict foreclosure should only be permitted where no substantial payment has been made, or where the present value of the land is less than the amount due vendor . . . ." Pound, Progress of the Law, 33 Harvard Law Review (1920), 813, 833 ff.

Whatever infirmities there may have been in the *ratio decidendi* of *Button v. Schroyer,* its precedent has well served Wisconsin lenders and borrowers, vendors and purchasers, as well as the legal profession for one hundred ten years.

That case held:

"The proper decree in such cases is, that the money due upon the *contract* be paid within such reasonable time as the court may direct, or that the vendee be foreclosed of his equity of redemption." (Emphasis supplied.)

In view of the very premise upon which land-contract financing is based (pay up as you agreed or lose all), the phrase, "due upon the contract," does not appear ambiguous. In *Benkert v. Gruenewald,* this court speaking through Mr. Justice WICKHEM stated:

"In strict foreclosure, however, the debtor must produce and pay the full amount due before expiration of the redemption period or be forever barred of any right or title to the land." *Benkert v. Gruenewald* (1936), 223 Wis. 44, 49, 269 N. W. 672.

The court therein recognized that default making the entire balance due *as a condition of redemption* could occur at any time during the life of the contract.

In *Dickson v. Loehr* (1906), 126 Wis. 641, 106 N. W. 793, the court, upon finding a default, declared the entire balance due. On appeal the order was set aside, not however because it was error to condition redemption on the full payment of a large balance, but because the time for redemption was unusually short.

In *St. Joseph's Hospital v. Maternity Hospital* (1937), 224 Wis. 422, 426, 272 N. W. 669, 273 N. W. 791, the

general rule of full payment was recognized, "Payment of the entire principal sum within this period was ordinarily, if not always, the condition of redemption."

However, the court in that case did not adhere to that principle and allowed instalment payments, though eventual redemption appeared unlikely, but it justified its recognized deviation from the rule by the fact that the vendee was a charitable institution, and that the financial depression made it impossible for the vendor to sell the property anyway and hence it was better off with continued instalment payments than with the return of the property. The court recognized that its mandate was contrary to the accepted rule, and the result of the case can clearly be explained on the basis of the axiom that, ". . . hard cases make bad law." [3]

We conclude that both the case law of Wisconsin and the rationale behind the use of a land contract inevitably require the conclusion that the purchaser pay the full purchase price as the condition of redemption from strict foreclosure. Those authorities that appear to support the respondent's point of view are from other jurisdictions and, therefore, have little relevance in view of our unique law in this respect or, more importantly, appear to be cases not involving strict foreclosure as we know it in Wisconsin, but foreclosure by sale or specific performance, where a different result would be obtained.

In the event the vendor relies upon the collection of the purchase price, and he wished one default to accelerate the obligation to pay the entire balance, then an acceleration clause is essential to his purpose. If he uses the remedy of strict foreclosure, the absence of an acceleration clause is irrelevant since the vendor seeks the return of his property; and the payment in full (though in part belatedly) by vendee is an incident to equity's shield of the vendee and is merely the condition for his opportunity to redeem. In the instant case it was error for the trial

---

[3] Justice Oliver Wendell Holmes.

judge to order that the vendee might redeem by paying only the past-due instalments upon principal, together with delinquent interest and taxes. On default redemption should be permitted only upon payment of the entire balance due upon the purchase price of the property.

The trial judge permitted a period of six months for the vendee to redeem. In view of the different standard that this court considers to be applicable, the redemption period should be reconsidered by the trial judge. The period of redemption is within the sound discretion of the trial judge. *Henry Uihlein Realty Co. v. Downtown Development Corp.* (1960), 9 Wis. (2d) 620, 628, 101 N. W. (2d) 775; *Dickson v. Loehr* (1906), 126 Wis. 641, 106 N. W. 793. We have previously set some standards that may assist the trial court in its decision. *Benkert v. Gruenewald* (1936), 223 Wis. 44, 48, 269 N. W. 672. See also 1942 Wisconsin Law Review, 90, 99.

Consideration should be given to the ability of the purchaser to redeem, and his state of solvency. Obviously much harm can be done to the vendor and little help be given to the vendee if in any event redemption is impossible. The value of the land and the likelihood of refinancing are relevant to that issue. Other significant facts are the size of the purchaser's equity, the length of the default, and materiality of time to the contract. Under the newly approved forms of land contract (see Wisconsin Real Estate Law 1965—Wisconsin Real Estate Commission), the vendor cannot declare the "contract at an end" until default shall have continued for more than sixty days. This should in the future obviate most questions as to materiality of the "time" of default.

Courts attempt to do equity in a foreclosure by manipulating the time given for redemption, rather than by permitting a reinstatement upon the mere payment of the arrearage, as contemplated by the trial court in this case. In the event the equities heavily favor the vendee, he is to be given all reasonable opportunity to pay up his contract obligation, either by being given a relatively long period

in which to redeem or, if circumstances warrant, additional periods of redemption. The court, however, must bear in mind that in fairness the vendor should not be deprived of his land for any considerable length of time, unless there appears to be a reasonable possibility for the vendee to redeem. Equity requires equal solicitude for the vendor and vendee.

*By the Court.*—Judgment reversed.