Patricia A. STEINER, Plaintiff-Co-Appellant,

John M. STEINER, Plaintiff,

UNITY HEALTH PLANS INS. CORP. and Healthcare Financing Administration, Involuntary-Plaintiffs,

v.

WISCONSIN AMERICAN MUTUAL INSURANCE COMPANY, Defendant-Respondent,

Robert STEINER and Mt. Morris Mutual Ins. Co., Defendants-Appellants.†

Court of Appeals

*No. 03–1959. Submitted on briefs January 13, 2004.—Decided June 10, 2004.*

2004 WI App 135

(Also reported in 685 N.W.2d 831.)

† Petition to review granted 9-16-04.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Jeffrey T. Nichols* and *Stacy K. Luell, Crivello, Carlson & Mentkowski, S.C.,* Milwaukee.

On behalf of the plaintiff-co-appellant, the cause was submitted on the briefs of *Gregory R. Wright, Gregory R. Wright Law Offices, S.C.,* Montello.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Timothy J. Yanacheck* and *Ward I. Richter, Bell, Gierhart & Moore, S.C.,* Madison.

Before Deininger, P.J., Vergeront and Higginbotham, JJ.

¶ 1. VERGERONT, J. In this personal injury action Patricia Steiner alleges that Steiner Corporation owned the resort at which she was injured. The circuit court concluded that Steiner Corporation did not own the resort at the time of her accident and granted summary judgment in favor of Wisconsin American Mutual Insurance Company (WAMIC), Steiner Corporation's insurer. Based on the record of the foreclosure proceeding against Steiner Corporation, the relevant common law, and our construction of WIS. STAT.

363

§ 846.30 (2001–02),[1] we agree with the circuit court that Steiner Corporation did not own the resort on the date of the accident. We therefore affirm.

## BACKGROUND

¶ 2. On October 15, 1999, Patricia was injured when she fell down a dry well at a resort on Castle Rock Lake in Adams County. Robert Steiner had been draining the waterlines for cabins on the resort that day, and had removed the cover for the dry well, leaving only a sheet of styrofoam over the hole. Patricia walked near the dry well, lost her footing, and fell down the hole. Patricia and her husband, John Steiner, filed a complaint against WAMIC as the insurer of Steiner Corporation, alleging that Steiner Corporation owned the resort at the time of the accident and was negligent in failing to properly cover the hole in which Patricia fell.[2]

¶ 3. WAMIC moved for summary judgment arguing among other points that Steiner Corporation did not own the resort at the time of the accident, and therefore Robert could not have been acting as Steiner Corporation's servant at that time. WAMIC submitted documents from a foreclosure action against Steiner Corporation to show the corporation had no interest in the property at the time of the accident.

¶ 4. The record of the foreclosure action shows the following. The resort had originally been purchased in the 1950s by Patricia, John, and John's brother,

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] Patricia and John Steiner subsequently amended their complaint to include a negligence claim against Robert Steiner and Mt. Morris Mutual Insurance Company, Robert's insurer. This appeal concerns only Patricia and John's claim against WAMIC.

Robert. For purposes of this appeal, it is undisputed that in the mid-1990s the three owners sold the property to Steiner Corporation by a series of land contracts. By 1998 Steiner Corporation had stopped making payments on the land contracts. Patricia and Robert filed suit to foreclose on the land contracts and take the property back for nonpayment.

¶ 5. In the foreclosure proceeding, the circuit court, with the Honorable Duane Polivka presiding, held a hearing on September 7, 1999, on the plaintiffs' motion for default judgment against Steiner Corporation. Because of a tax lien on the property, the parties and court agreed that a foreclosure and sheriff's sale was preferable to a strict foreclosure. The court made an oral ruling setting a thirty-day period for redemption and the amount required to be paid to redeem the property. The closing comments of the court show it anticipated that a confirmation of the sale would follow.

¶ 6. However, the next documents in the record are "Findings of Fact and Conclusions of Law" and "Judgment," entered on October 19, 1999, which make no reference to a sheriff's sale but instead provide for strict foreclosure. The judgment states that if the defendants do not pay the specified sum by October 7, 1999, all their right, title, and interest to the property will cease to exist and title will vest in the plaintiffs. The final document from the foreclosure record is a "Final Judgment" entered on December 1, 1999, stating that no payment had been received, confirming the judgment of October 19, 1999, "in all respects," and stating that "all right, title and interest of Defendants . . . shall cease to exist." This final judgment describes the judgment entered on October 19, 1999, as "providing for the strict foreclosure of [the land

contracts, and] providing the Defendants shall have thirty (30) days from October 19, 1999 to pay . . . the amount due."

¶ 7. The circuit court in this action, Judge Polivka again presiding, concluded that under strict foreclosure law, Steiner Corporation lost all right and title to the property when it failed to pay the full amount due before the end of the redemption period, which, the court stated, was October 7, 1999. The court decided that, because Steiner Corporation no longer owned the property, it "had no basis on which to employ Robert Steiner and no right to control his activities." Accordingly, the court granted summary judgment in favor of WAMIC and dismissed the claim against it. Patricia, Robert, and Mt. Morris appeal from that judgment.

### DISCUSSION

■■■

¶ 8. We review a summary judgment de novo, applying the same standard as the trial court. *Guenther v. City of Onalaska*, 223 Wis. 2d 206, 210, 588 N.W.2d 375 (Ct. App. 1998). A party is entitled to summary judgment if there are no genuine issues of material fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). In deciding whether there are genuine issues of material fact, the court is to draw all reasonable inferences in favor of the nonmoving party. *Strasser v. Transtech Mobile Fleet Serv., Inc.*, 2000 WI 87, ¶ 32, 236 Wis. 2d 435, 613 N.W.2d 142. Whether an inference is reasonable is a question of law, and if there is only one reasonable inference, then the drawing of that inference is also a question of law. *Groom v. The Professionals Ins. Co.*, 179 Wis. 2d 241, 249, 507 N.W.2d 121 (Ct. App. 1993).

¶ 9. The appellants argue that the circuit court erred in concluding that Steiner Corporation no longer owned the resort on October 15, 1999, the day of the accident. Robert and Mt. Morris contend the judgment of strict foreclosure was not entered against Steiner Corporation until October 19, and Steiner Corporation had thirty days from that date to redeem the property, or, under Wis. Stat. § 846.30, at least seven days from October 19. In the alternative, they argue, along with Patricia, that, regardless of the date on which the redemption period ended, under § 846.30 the judgment was not "final" until a confirmation of the judgment was entered on December 1, 1999. Thus, they assert, Steiner Corporation still owned the resort until the judgment was confirmed on December 1, 1999.

¶ 10. WAMIC responds that the circuit court correctly decided the period of redemption expired on October 7, 1999, and therefore Steiner Corporation no longer owned the resort after that date. As WAMIC construes Wis. Stat. § 846.30, the statute does not alter this result.

¶ 11. A resolution of the dispute over Steiner Corporation's ownership on October 15, 1999, requires that we analyze the foreclosure proceedings in light of the relevant common law and Wis. Stat. § 846.30. The question of the proper interpretation of § 846.30 presents a question of law, which we review de novo. *See State v. Setagord*, 211 Wis. 2d 397, 405–06, 565 N.W.2d 506 (1997). We begin with the language of the statute, and if that yields a plain meaning, we apply that meaning. *State ex rel. Kalal v. Cir. Ct. for Dane County*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. A statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons. *Id.*, ¶ 47. If a statute is ambigu-

367

ous, we may look beyond the language to extrinsic sources to resolve the ambiguity. *Id.*, ¶ 50.

## 1. *Background Law on Land Contracts and Remedies*

¶ 12. Under a land contract, the vendor holds legal title while the vendee holds equitable title. *See City of Milwaukee v. Greenberg* 163 Wis. 2d 28, 36–39, 471 N.W.2d 33 (1991). The vendee has "full rights" of ownership over the property as well as liabilities—for instance, for taxes assessed on the property. *Id.* at 37–38. The vendee is also generally liable to third parties injured on the property. *See McCarty v. Covelli,* 182 Wis. 2d 342, 345–46, 514 N.W.2d 45 (Ct. App. 1994).

¶ 13. There are several remedies available to a vendor if a vendee defaults on a land contract. *Kallenbach v. Lake Publ'ns, Inc.*, 30 Wis. 2d 647, 651, 142 N.W.2d 212 (1966). The two remedies relevant in this case are specific performance and strict foreclosure. Specific performance is similar to a mortgage foreclosure proceeding that results in a sheriff's sale of the property. JAMES J. VANCE, TITLES TO REAL ESTATE § 18.04D (1998 revised ed.). Out of the proceeds from the sale of the property, the land contract vendor is entitled to the contract price and the vendee is awarded the remainder; if the property is sold for less than the contract price, the vendee is liable for the deficiency. *Kallenbach,* 30 Wis. 2d at 651. In a strict foreclosure, there is no sale. Rather, the circuit court sets a "period of redemption" during which the vendee has the ability to pay the remainder due on the contract. *Id.* at 652–54. If the vendee fails to pay in full the equitable title passes to the vendor. *Id.*

368

## 2. *Redemption Period*

██

¶ 14. Robert and Mt. Morris argue that the circuit court's September 7, 1999 oral ruling opted for the remedy of specific performance by proceeding to a sheriff's sale, instead of the remedy of strict foreclosure, and that a judgment of strict foreclosure was not granted until October 19. They argue that, because there was no sale, the Steiner Corporation retained its equitable interest in the property after the expiration of the thirty-day period of redemption set for the sale, and the October 19 judgment of strict foreclosure set a second period of redemption, which did not expire until November 18, 1999. For this second period of redemption, they rely on the December 1 final judgment, which describes the October 19 judgment as providing for thirty days from October 19, 1999, in which to pay the amount due.

¶ 15. We agree with these appellants that the court's September 7 oral ruling and October 19 judgment are inconsistent in that the former contemplated a sheriff's sale and the latter provides for strict foreclosure. However, we conclude the only reasonable inference from the record is that the parties agreed to change the remedy to strict foreclosure sometime after September 7 and before the judgment was entered on October 19, and also agreed to use the same thirty-day redemption period established by the court for the sale. The October 19 findings of fact and conclusions of law and the October 19 judgment both refer to the hearing on September 7 as the basis for the findings and conclusions. The findings and conclusions include the finding that "thirty (30) days commencing as of September 7, 1999, is a reasonable time for the Defendants to perform said contract"; the conclusion that the defen-

dants "shall perform the said Land Contract on or before October 7, 1999"; and the conclusion in paragraph 15 that "judgment of strict foreclosure shall provide that should the Defendants not perform said Land Contract within the time specified above, Defendants . . . shall be forever foreclosed from any right, title and interest in the land described herein and title shall vest in the name of the Plaintiffs herein." As we have noted above, the October 19 judgment repeats October 7 as the date by which payment must be made and the provisions of paragraph 15 of the findings and conclusions. There is no reasonable way to read these documents, even in light of the transcript of the September 7 hearing, as other than establishing October 7 as the end of the redemption period for the remedy of strict foreclosure.

¶ 16. It is true that the use of the future tense in conjunction with the October 7 date (i.e., "shall perform the said Land Contract on or before October 7, 1999") is incongruent with the October 19 date of entry of the findings of fact and conclusions of law and the judgment. However, that is simply a function of when the court signed and entered the documents.[3] It does not create an ambiguity concerning the contents, much less establish unambiguously that the redemption period was to begin on October 19, as the appellants contend.

¶ 17. The December 1 final judgment injects another inconsistency, but, again, we conclude that no reasonable inference supports the appellants' position. This final judgment has an internal inconsistency. It states that "the original judgment entered by this court

---

[3] We note that both the findings of fact and conclusions of law and the judgment bear the typed date "September ___, 1999," and that someone (presumably the court when signing them) lined through "September" and wrote in "October 19."

on October 19, 1999 . . . is confirmed in all respects," but also states the defendants had thirty days from October 19, 1999, in which to pay the amount due, which contradicts the October 19 judgment's unambiguous language that the period of redemption was to end October 7. The only reasonable explanation for this discrepancy is that the period of redemption described in the December 1 final judgment is a mistake. This final judgment, when read together with the October 19 judgment, is plainly intended to confirm the October 19 judgment because there had been no payment. It cannot reasonably be read to confirm that judgment and at the same time alter the redemption period plainly established in that judgment.

¶ 18. Robert and Mt. Morris argue in the alternative that the period of redemption could not have ended October 7, 1999, because, under Wis. Stat. § 846.30, Steiner Corporation was entitled to at least a seven-day redemption period from the date of entry of the judgment of strict foreclosure, which was October 19.

¶ 19. Wisconsin Stat. § 846.30 provides:

> **Redemption period for land contracts.** If a court finds that the purchaser under a land contract is obligated to make certain payments under that land contract, that the purchaser has failed to make the required payments and that the vendor is entitled to a judgment of strict foreclosure, *the court shall set a redemption period of at least 7 working days from the date of the judgment hearing or, if there is no hearing, from the date of the entry of the judgment order.* No judgment of strict foreclosure is final until the court enters an order after the expiration of the redemption period confirming that no redemption has occurred and making the judgment of strict foreclosure absolute.

(Emphasis added.) Under the plain language of the

statute, if there is a judgment hearing, the redemption period must be at least seven days from that date. We have already concluded that the October 19 findings of fact and conclusions of law and the judgment plainly show that the parties agreed, after the fact, to treat the September 7 hearing as the date on which the court granted the request for a judgment of strict foreclosure and ordered a redemption period of thirty days from September 7. While it may be that a party to that proceeding could have objected to that agreement if that party's interests were adversely affected, the record does not indicate that any party did. We conclude that § 846.30 does not require a redemption period beyond October 7, 1999.

### 3. *Finality under WIS. STAT. § 846.30*

¶ 20. Patricia, Robert, and Mt. Morris argue that, regardless of the date on which the redemption period expired, under WIS. STAT. § 846.30 Steiner Corporation's ownership interest in the resort was not extinguished until December 1, 1999, when the circuit court entered the final judgment confirming that the redemption period had ended without payment in full by Steiner Corporation. The appellants argue that, because the statute requires a confirmation order before the strict foreclosure is "final," ownership in the resort could not have been transferred before the confirmation order was entered on December 1. WAMIC responds that § 846.30 was enacted to put an end to the uncertainty existing under common law by requiring a final order confirming nonpayment, not to change the substantive rights of parties to land contracts that had long existed at common law. In WAMIC's view, under common law Steiner Corporation's rights in the resort were terminated when

372

the redemption period expired on October 7, 1999, and the date on which the final judgment was entered does not affect that result.

██

¶ 21. We conclude that both constructions of WIS. STAT. § 846.30 are reasonable. An order making a strict foreclosure judgment "final" may be reasonably construed to be an order that completely resolves the dispute between the vendor and vendee by transferring title to the vendor. On the other hand, "final" can reasonably be construed as providing finality by confirming a transfer of title that has already occurred. The statute is therefore ambiguous.

¶ 22. As a first step in resolving this ambiguity, we examine the relevant common law existing at the time WIS. STAT. § 846.30 was enacted in 1995.[4] In *Exchange Corp. v. Kuntz*, 56 Wis. 2d 555, 561, 202 N.W.2d 393 (1972), the supreme court described the judgments in strict foreclosure actions as

> somewhat unusual, in that basically they grant relief from a forfeiture on equitable grounds and declare the rights of the parties upon certain conditions . . . . [T]he judgment . . . becomes final or absolute only upon the expiration of the period of redemption. Such a judgment may be considered as an interlocutory judgment which

---

[4] WISCONSIN STAT. § 846.30 was enacted by 1995 Wis. Act 250. The first sentence of § 846.30 mandates a period of redemption for strict foreclosures of land contracts, which had not before then been required by statute. According to the Legislative Reference Bureau analysis, this provision was intended to bring strict foreclosure actions into accord with mortgage foreclosure actions. Legislative Reference Bureau Drafting File for 1995 Wis. Act 250, Analysis by the Legislative Reference Bureau of 1995 A.B. 579. Our analysis concerns only the second sentence of the statute.

> automatically becomes final upon the expiration of the period of redemption without any further motion or decree making it absolute. If the record is to reflect the fact the vendee did not redeem, an order *may* be entered finding the vendee did not meet the conditions; sometimes an affidavit of such fact is filed. But if the order is used, it would normally not confirm the title but merely reaffirm the legal title in the vendor.

(Emphasis added.) Based on these considerations the court held that, while the circuit court had the authority during the redemption period to extend it, once the period had expired, the court could not extend it, unless in an unusual case the court had reserved that power. *Id.* at 561–62. Thus, prior to the enactment of § 846.30, if the requisite payment was not made by the end of the redemption period, all title in the vendee ceased and absolute title vested in the vendor without any order required to confirm the fact of nonpayment.

¶ 23. We agree with WAMIC that accepting the appellants' construction of Wis. Stat. § 846.30 would be a significant change from common law, in that it would alter the time at which title in the vendee ceases and absolute title vests in the vendor. A change in the common law must be clearly expressed. *Gaugert v. Duve*, 2001 WI 83, ¶ 41, 244 Wis. 2d 691, 628 N.W.2d 861. Section 846.30 clearly expresses the requirement of a confirming order to make a strict foreclosure judgment final—a requirement that did not exist at common law. However, the statute does not clearly express that the date on which title transfers is delayed until that order is entered. Thus, this rule of statutory construction favors WAMIC's construction.

¶ 24. Three additional considerations favor WAMIC's construction. First, adoption of the appellants' construction would mean that there is an indefinite period ·of time from the end of the redemption period, now mandated by statute, until the transfer of title. During this time the vendee would no longer have the right to redeem but would still own the property and presumably still have the obligations and liabilities of the owner. This is not a logical result.

¶ 25. The second point, related to the first, is that the date on which the confirming order is entered would not be tied, either by statute or by practical realities, to the actual situations of the vendor and vendee. Instead it might depend simply on when an order is presented to the court to sign, or when the court is able to sign and enter the order.

¶ 26. Finally, WAMIC's construction does not make the confirming order meaningless, as the appellants contend. Although the confirming order does not establish the date of transfer of title, it does add a measure of certainty and predictability that did not exist at common law. Thus, for example, parties interested in ascertaining the chain of title to property can rely on the confirming order as proof that the vendee indeed failed to redeem before the end of the period of redemption.[5]

---

[5] We acknowledge that our construction may raise questions on the effect of the failure to have a confirming order entered. Those questions are not before us, because a confirming order was entered here. However, we are satisfied that it is more reasonable to construe the statute as leaving the time of the transfer of title unchanged even if that construction may present questions about the precise effect of the lack of a confirming order.

¶ 27. Because we construe WIS. STAT. § 846.30 to leave unchanged the common law rule that absolute title vests in the vendor at the end of the redemption period if payment in full has not been made, we conclude that Steiner Corporation lost its equitable title in the resort on October 7, 1999, not December 1, 1999.

## CONCLUSION

¶ 28. Based on the undisputed facts, we conclude that under the judgment entered on October 19, 1999, the period of redemption for the judgment of strict foreclosure against Steiner Corporation ended October 7, 1999. We further conclude that under common law, Steiner Corporation's equitable title in the resort passed to Patricia, John, and Robert Steiner on that date. Therefore, Steiner Corporation did not own the resort on October 15, 1999, and is not liable for injuries sustained by Patricia on that day. Accordingly, we affirm the circuit court's decision to grant Steiner Corporation's motion for summary judgment.[6]

*By the Court.*—Judgment affirmed.

---

[6] Because of this conclusion, we need not address the appellants' arguments that Robert was acting as an employee or servant of Steiner Corporation at the time of the accident and that Steiner Corporation is liable for Patricia's injuries under the "safe place" statute, WIS. STAT. § 101.11.