T.C. Memo. 2014-254

UNITED STATES TAX COURT

ROSE A. WODACK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8009-12.                    Filed December 17, 2014.

Rose A. Wodack, pro se.

<u>Richard Charles Grosenick</u> and <u>Mark J. Miller</u>, for respondent.

MEMORANDUM OPINION

PARIS, <u>Judge</u>:  Respondent determined a deficiency in Federal income tax

of $2,609 for petitioner's 2008 taxable year.  The only issue before the Court is

[*2] whether petitioner is entitled to the first-time homebuyer credit under section 36(a).[1]  The Court holds that petitioner is not entitled to the credit.

Background

The parties submitted this case fully stipulated, without trial, pursuant to Rule 122.  The parties' stipulations of facts are hereby incorporated by reference and are found accordingly.  At the time of the filing of the petition, petitioner resided in Wisconsin.

On August 3, 1993, petitioner entered into a seller-financed land contract for a tract of land and a residence (property or property at issue) with Howard Schlise.  Petitioner and Mr. Schlise are not related.  The land contract states: "Vendor sells and agrees to convey to Purchaser, upon the prompt and full performance of this contract by Purchaser, the following property, together with the rents, profits, fixtures and other appurtenant interests", and then describes the property at issue.

Pursuant to the land contract, petitioner agreed to pay Mr. Schlise $27,500 for the property.  The land contract specified that petitioner was to pay $1,000 upon execution of the contract and make monthly payments of $222.39 over a

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] five-year term. Interest accrued at the rate of 9%. The land contract called for full payment of the outstanding balance by September 1, 1998, but stated that "[t]he purchaser may request an extension of land contract for an additional five years provided the purchaser has given 30 days written notice of such intention to extend and provided the interest is recalculated at 3 points above prime rate as quoted in the Wall Street Journal, and the principal is amortized over 20 years."

Under the contract, petitioner was required to pay Mr. Schlise annual property taxes, special assessments, and fire and other required insurance premiums. Mr. Schlise was to hold these amounts in escrow and apply the payments to the obligations when they became due.[2] Petitioner agreed to keep the improvements on the property insured in an amount at least equal to the balance owed under the contract. Petitioner further agreed not to commit waste, to keep the property in "good tenantable condition and repair", to keep the property from superior liens, and to comply with all laws affecting the property. In return, petitioner had the right to take possession of the property at the time of the closing and could improve the property without permission.

---

[2]Another paragraph of the contract contemplates that petitioner will pay property taxes, assessments, and insurance premiums directly and deliver receipts showing such payment to Mr. Schlise upon demand.

[*4]   The land contract also vested Mr. Schlise with certain rights and obligations.  Upon petitioner's paying the principal and interest in full, Mr. Schlise had the obligation to "execute and deliver to Purchaser, a Warranty Deed, in fee simple, of the Property, free and clear of all liens and encumbrances" with certain exceptions not relevant here.  Mr. Schlise also had the right, which terminated five years from closing, to repurchase the property at the original purchase price if petitioner put the property up for sale.  He also had certain rights upon petitioner's default, including:  the right of strict foreclosure, the right to sue for specific performance by full payment through judicial sale, the right to sue at law for the entire unpaid purchase price, the right to initiate a quiet title action, and the right to have petitioner ejected from the property and to have a receiver appointed to collect rents.  Moreover, Mr. Schlise could demand full payment of the remaining balance if petitioner transferred any interest in the property without his permission.

Petitioner resided at the property at issue, made timely monthly payments, and renewed the land contract for two additional five-year terms without issue.  Mr. Schlise passed away on August 20, 2006.  Mr. Schlise's interest in the property at issue passed to the Schlise Family Trust.  When the contract's third five-year period was coming to an end in 2008, petitioner requested that the

[*5] Schlise Family Trust renew the contract for another five years or until such time as she could procure a "conventional mortgage".

Mr. Schlise's son's attorney chose not to renew the contract for another five years.[3]  Petitioner therefore decided to pay in full the balance owing upon expiration of the contract.  The contract expired in August 2008.  Petitioner contacted Attorney Philip Johnson to request the payoff figure.[4]  On October 31, 2008, Mr. Johnson wrote a letter stating that the payoff figure on November 20, 2008, was $19,768.31.  On November 18, 2008, petitioner obtained a loan through a promissory note with Riverside Finance, Inc., for $25,006.29.  Riverside Finance paid $19,758.47 by check to the "Schlise Trust" out of these proceeds.[5]  The Schlise Family Trust transferred the deed to petitioner in November 2008.[6]

On her Federal income tax return for taxable year 2008, petitioner claimed a first-time homebuyer credit of $2,609 pursuant to section 36(a).  After an

---

[3]It is unclear whether the attorney was acting as the trustee of the Schlise Family Trust or as Mr. Schlise's son's representative.

[4]It is unclear whether Philip Johnson was the same attorney who chose not to extend the contract.

[5]This figure equals the $19,768.31 that Mr. Johnson provided petitioner as a payoff figure for November 20, 2008, adjusted downward for two days' per diem of $4.92 each as calculated by Mr. Johnson.

[6]The deed is not part of the record.

**[*6]** examination, respondent sent petitioner a notice of deficiency on December 28, 2011, disallowing the credit. On March 28, 2012, petitioner filed a timely petition in this Court for redetermination.

## Discussion

The Commissioner's determination of a deficiency is generally presumed correct, and the taxpayer bears the burden of proving it incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions and credits are matters of legislative grace, and the taxpayer bears the burden of proving entitlement to any deductions or credits claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Pursuant to section 36(a), a first-time homebuyer of a principal residence is entitled to a credit of 10% of the purchase price, not to exceed $7,500. The taxpayer must have purchased the residence on or after April 9, 2008, and before July 1, 2009.[7] Sec. 36(h). The term "first-time homebuyer" is defined in section 36(c)(1) to mean "any individual if such individual * * * had no present ownership

---

[7]The credit was later extended to apply to purchases made on or after April 9, 2008, and before May 1, 2010. See sec. 36(h)(1) (as amended by the Worker, Homeownership, and Business Assistance Act of 2009, Pub. L. No. 111-92, sec. 11, 123 Stat. at 2989).

**[\*7]** interest in a principal residence during the 3-year period ending on the date of the purchase of the principal residence to which this section applies." As pertinent here, the term "purchase" is defined in section 36(c)(3) to mean "any acquisition".

The only issue is whether petitioner purchased the property at issue on or after April 9, 2008, and before July 1, 2009. Petitioner contends that she purchased the property in November 2008 when she paid the Schlise Family Trust the remaining balance under the land contract and received the deed to the property. Respondent asserts that petitioner purchased the property within the meaning of section 36(a) on August 3, 1993, because (1) under Wisconsin law, petitioner had equitable title to the property upon execution of the land contract, and (2) petitioner had possession of the property and enjoyed the benefits and burdens of ownership beginning in 1993.

In determining when a purchase occurred for purposes of the first-time homebuyer credit, the Court has looked to when the benefits and burdens of ownership have shifted. See Woods v. Commissioner, 137 T.C. 159, 162 (2011); see also Baird v. Commissioner, 68 T.C. 115, 124 (1977) (analyzing when the transfer of property occurred for purposes of real estate depreciation and mortgage interest deductions). Generally, a transfer is complete upon the earlier of the transfer of title or the shift of the benefits and burdens of ownership. Woods v.

**[*8]** Commissioner, 137 T.C. at 162; Deyoe v. Commissioner, 66 T.C. 904, 910 (1976) (citing Dettmers v. Commissioner, 430 F.2d 1019, 1023 (6th Cir. 1970), aff'g Estate of Johnston v. Commissioner, 51 T.C. 290 (1968)).

State law determines a taxpayer's property rights. See United States v. Nat'l Bank of Commerce, 472 U.S. 713, 722 (1985); Patel v. Commissioner, 138 T.C. 395, 404 (2012); Woods v. Commissioner, 137 T.C. at 162. Federal tax consequences are decided under Federal law. Patel v. Commissioner, 138 T.C. at 404; Woods v. Commissioner, 137 T.C. at 162. Accordingly, the Court looks to Wisconsin law to determine what rights petitioner had in the property at issue. The Court considers the substance of the property rights under State law, including the benefits and burdens of such rights, and not merely the labels that the State gives to these rights or the conclusions it draws from them. United States v. Craft, 535 U.S. 274, 279 (2002); Patel v. Commissioner, 138 T.C. at 404.

Among the factors which this and other courts have cited as indicative of the benefits and burdens of ownership are: a right to possession; an obligation to pay taxes, assessments, and charges against the property; a responsibility for insuring the property; a duty to maintain the property; a right to improve the property without the seller's consent; a bearing of the risk of loss; and a right to obtain legal title at any time by paying the balance of the full purchase price. See

[*9] Keith v. Commissioner, 115 T.C. 605, 611-612 (2000); Goldberg v. Commissioner, T.C. Memo. 1997-74, aff'd without published opinion, 246 F.3d 674 (9th Cir. 2000); see also Major Realty Corp. & Subs. v. Commissioner, 749 F.2d 1483, 1487 (11th Cir. 1985), aff'g in part, rev'g in part T.C. Memo. 1981-361; Grodt & McKay Realty, Inc. v. Commissioner, 77 T.C. 1221, 1237-1238 (1981); Musgrave v. Commissioner, T.C. Memo. 2000-285; Berger v. Commissioner, T.C. Memo. 1996-76; Spyglass Partners v. Commissioner, T.C. Memo. 1995-452.  When a buyer, by virtue of these incidents, would be considered to have obtained equitable ownership under State law, a sale will generally be deemed completed for Federal tax purposes.  Keith v. Commissioner, 115 T.C. at 612.

Under Wisconsin law, the doctrine of "equitable conversion" governs sales of property.  City of Milwaukee v. Greenberg, 471 N.W.2d 33, 36 (Wis. 1991); Kallenbach v. Lake Publ'ns, Inc., 142 N.W.2d 212 (1966).  As stated by the Wisconsin Supreme Court:

> A land contract vendor holds legal title as security for the unpaid balance of the contract, while the land contract vendee holds equitable title.  Holding equitable title in effect gives the land contract vendee "full rights" of ownership * * *.  The land contract vendee has liabilities generally attributed to ownership, such as payment of taxes, and is also generally liable as the owner to third parties injured on the property.

**[*10]** <u>Steiner v. Wis. Am. Mut. Ins. Co.</u>, 697 N.W.2d 452, 457 (Wis. 2005) (fn. refs. omitted). Although the vendor's interest in the land is not identical to that of a mortgagee's, the vendor under a land contract holds bare legal title as security for the unpaid balance. <u>Greenberg</u>, 471 N.W.2d at 36, 39.

The Court holds that under Wisconsin law petitioner became the equitable owner of the property at issue as of August 3, 1993, the effective date of the land contract. Petitioner obtained the benefits and burdens of ownership at that time. She had the right of possession and made the property her principal residence. As required by the contract, petitioner paid the real property taxes, assessments, and insurance. She also had an obligation to maintain the property and could improve the property without permission. Under Wisconsin law, petitioner bore the risk of loss. <u>See</u> <u>Steiner</u>, 697 N.W.2d at 457-458. She also had the right to obtain legal title by paying the remaining balance under the contract. And though petitioner had to seek Mr. Schlise's permission to transfer any interest in the property, the Court does not find this inconsistent with Mr. Schlise's rights as a creditor. <u>See</u> <u>id.</u> at 457. ("Holding equitable title in effect gives the land contract vendee 'full rights' of ownership, including the ability to 'sell, lease or encumber the real estate subject to the rights of the Vendor unless the contract provides to the contrary.'"

**[*11]** (quoting Martin J. Greenberg & Henry R. Pinekenstein, Wisconsin Land Contracts 2 (1986))).

The decision not to renew the contract did not affect petitioner's status as owner of the property, as her rights and obligations under State law did not change at that time. Moreover, there is no indication that the benefits and burdens of ownership shifted briefly to the Schlise Family Trust upon expiration of the contract in August 2008 until petitioner obtained full legal title in November 2008.[8] Petitioner continued to reside at the property and presumably was still liable for taxes, insurance premiums, and the like.

Accordingly, the Court finds that for purposes of section 36 petitioner "purchased" the real property in question on August 3, 1993, and thus not on or after April 9, 2008, and before July 1, 2009, as required by section 36(h). On that record, the Court holds that petitioner is not entitled to the first-time homebuyer credit under section 36(a) for her taxable year 2008.

---

[8]Even if petitioner briefly lost her status as the property's equitable owner between the expiration of the third contract renewal and her procurement of legal title to the property, she still would not qualify for the credit as she would not be considered a "first-time homebuyer" under those circumstances. See sec. 36(c)(1) ("The term 'first-time homebuyer' means any individual if such individual (and if married, such individual's spouse) had no present ownership interest in a principal residence during the 3-year period ending on the date of the purchase of the principal residence to which this section applies.").

[*12] To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.