Patricia A. STEINER,
Plaintiff-Co-Appellant,

John M. STEINER,
Plaintiff,

UNITY HEALTH PLANS INS. CORP.
and Healthcare Financing Administration,
Involuntary-Plaintiffs,

v.

WISCONSIN AMERICAN MUTUAL INSURANCE COMPANY,
Defendant-Respondent,

Robert STEINER and Mt. Morris Mutual Ins. Co.,
Defendants-Appellants-Petitioners.

Supreme Court

*No. 2003AP1959. Oral argument March 1, 2005.
—Decided June 9, 2005.*

2005 WI 72

(Also reported in 697 N.W.2d 452.)

For the defendants-appellants-petitioners there were briefs by *Jeffrey T. Nichols, Stacy K. Luell* and *Crivello, Carlson & Mentkowski, S.C.,* Milwaukee, and oral argument by *Stacy Kay Luell.*

For the defendant-respondent there was a brief by *Timothy J. Yanacheck, Ward I. Richter* and *Bell, Gierhart & Moore, S.C.,* Madison, and oral argument by *Timothy J. Yanacheck.*

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published decision of the court of appeals[1] affirming a judgment of the Circuit Court for Adams County, Duane H. Polivka, Judge. The circuit court granted summary judgment in favor of Wisconsin American Mutual Insurance Company (WAMIC), Steiner Corporation's insurer, against Patricia Steiner and her husband John Steiner, the plaintiffs, concluding that the Corporation (the land contract vendee) did not own the property in question as of October 7, 1999, and therefore was not liable for the plaintiffs' injuries sustained on the property on October 15, 1999.

¶ 2. The court of appeals affirmed the judgment of the circuit court, concluding that the period for redemption for the judgment of strict foreclosure of a land contract against the Corporation (the land contract vendee) ended on October 7, 1999, and that under Wis. Stat. § 846.30 (2001–02),[2] equitable title reverts to the land contract vendor at the expiration of the redemption period if the land contract vendee fails to make full payment, that is, fails to redeem. According to the court of appeals, the Corporation ceased to own the property as of October 7, 1999. Therefore, the corporation was not liable for any personal injuries occurring on the property after October 7, 1999.

¶ 3. The issue presented in this case is when, under Wis. Stat. § 846.30,[3] does equitable title to the

---

[1] *Steiner v. Wis. Am. Mut. Ins. Co.*, 2004 WI App 135, 275 Wis.2d 359, 685 N.W.2d 831.

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

[3] Wisconsin Stat. § 846.30 reads:

> If a court finds that the purchaser under a land contract is obligated to make certain payments under that land contract, that the purchaser has failed to make the required payments and that

property in a land contract revert from a land contract vendee to the land contract vendor. That is, does equitable title remain with a land contract vendee until a circuit court, following expiration of the redemption period for strict foreclosure, enters an order confirming the land contract vendee's default? Or does equitable title to the property automatically revert to the land contract vendor at the expiration of the redemption period for strict foreclosure without a circuit court entering an order?

¶ 4. We hold that under Wis. Stat. § 846.30 equitable title remains with a land contract vendee until a circuit court enters a final order, following the redemption period for strict foreclosure, confirming the land contract vendee's nonredemption. As a result, in the present case equitable title did not pass from the Steiner Corporation (the land contract vendee) to the land contract vendors until December 1, 1999, when an order confirming the nonredemption was entered. Accordingly, the Corporation had equitable title to the property under the land contract on October 15, 1999, the date of the plaintiffs' personal injuries, and the Corporation and WAMIC, its insurer, may be subject to liability for plaintiffs' injuries.

¶ 5. Accordingly, we reverse the decision of the court of appeals and remand the cause to the circuit court for further proceedings consistent with this decision.

---

the vendor is entitled to a judgment of strict foreclosure, the court shall set a redemption period of at least 7 working days from the date of the judgment hearing or, if there is no hearing, from the date of the entry of the judgment order. No judgment of strict foreclosure is final until the court enters an order after the expiration of the redemption period confirming that no redemption has occurred and making the judgment of strict foreclosure absolute.

¶ 6. We discuss the issue presented, exploring its various aspects, in the following order: I. The standard of appellate review. II. The facts. III. The law of foreclosure of land contracts. IV. The interpretation of Wis. Stat. § 846.30. V. The application of Wis. Stat. § 846.30 to the facts. VI. The liability of Steiner Corporation for the acts of Robert Steiner.

## I

¶ 7. In reviewing a grant of summary judgment, an appellate court applies the standards governing summary judgment set forth in Wis. Stat. § 802.08(2) in the same manner as the circuit court.[4] Summary judgment is appropriate when there are no issues of material fact, but only questions of law upon which the moving party is entitled to judgment.[5] In reviewing whether there are genuine issues of material fact, a reviewing court will draw all reasonable inferences in favor of the nonmoving party.[6]

¶ 8. There are no issues of material fact at issue in the present case. The only question presented is one of law, namely, the interpretation and application of Wis. Stat. § 846.30 to the undisputed facts. This court determines this question of law independently of the circuit

---

[4] *Badger State Bank v. Taylor,* 2004 WI 128, ¶ 12, 276 Wis. 2d 312, 688 N.W.2d 439.

[5] *Id.* at ¶ 12.

[6] *Strasser v. Transtech Mobile Fleet Serv.,* 2000 WI 87, ¶ 32, 236 Wis. 2d 435, 613 N.W.2d 142.

court and the court of appeals, benefiting from their analyses.[7]

## II

¶ 9. We set forth the facts that are, for purposes of the motion for summary judgment, not in dispute.

¶ 10. Patricia Steiner and John Steiner, Sr., Patricia's husband, are the plaintiffs in this suit for personal injuries. They and John Steiner, Sr.'s brother, Robert Steiner, purchased the resort property at issue in this case in 1954.[8] The three will be referred to as the land contract vendors.

¶ 11. The land contract vendors conveyed their interest in the property in 1995 to the Steiner Corporation by a series of land contracts.[9] The plaintiffs' three sons, John, Jr., Patrick, and David Steiner, were the shareholders of Steiner Corporation. WAMIC provided Steiner Corporation liability insurance coverage for the property.

¶ 12. The Steiner Corporation apparently made a modest down payment and paid very little on the principal and interest under the land contract. By 1998 Steiner Corporation had stopped making payments on the land contract altogether. Third parties had liens on the property.

---

[7] *Id.* at ¶ 13.

[8] Patricia Steiner and her husband owned an undivided half interest; Robert Steiner owned the other undivided half interest.

[9] Originally, the land contract vendees were John Steiner, Jr. and Patrick Steiner, but a year later the land contract was voided and the land was conveyed by land contract to Steiner Corporation.

¶ 13. The land contract vendors filed suit in April 1999 to foreclose on the land contract and take back the property. They moved for a default judgment on the foreclosure action in August 1999. In response to this motion, on September 7, 1999, the circuit court held a hearing.

¶ 14. The land contract vendors' suit for foreclosure originally sought strict foreclosure, but at the hearing the parties and the circuit court agreed that specific performance (judicial sale) would be preferable in this case because of third-party debts, including a tax lien by the state.

¶ 15. The property was not sold by judicial sale. Instead, the circuit court entered a strict foreclosure judgment on October 19, 1999, not the previously agreed-upon specific performance. The judgment provided that if the Corporation did not pay the amount owed by October 7, 1999, "all right, title and interest" of the Steiner Corporation in the property would cease to exist; title would vest in the land contract vendors. The judgment read, in relevant part:

> [T]here is now due and unpaid on said Land Contract, as of September 7, 1999, the sum of [$178,330.15 plus costs, fees, and interest]. . . . That the said Land Contracts . . . be strictly foreclosed. That the Defendants shall, on or before October 7, 1999, pay the Clerk of this Court the total sum now due under said Contract [plus interest to redeem the contract.]
>
> . . . .
>
> That if payment is not made within the time above specified, the real estate described herein, and any interest therein of Defendants and any persons claiming under them, and all right, title and interest of Defendants therein, shall cease to exist, with the title vesting in the name of Plaintiffs . . . .

402

[The judgment also contained provisions should Steiner Corporation redeem the property by paying the outstanding amount.]

The judgment's typewritten date line reads: "Dated September ____, 1999." "September" is crossed out and "October" is hand- written over it; the blank is filled in with "19th." This October 19 judgment provides for a redemption period ending 30 days after the September 7 hearing, or October 7.

¶ 16. A final judgment was entered on December 1, 1999. The final judgment states that the October 19, 1999 order provided for strict foreclosure with a redemption period ending 30 days from October 19. This final judgment does not mention the September 7 hearing or a 30–day redemption period ending on October 7. The December 1 judgment nevertheless confirmed that Steiner Corporation failed to pay the amount owed within 30 days of October 19, 1999, and that the land contract vendee's interest "shall cease to exist and shall be and hereby are forever barred." The relevant portion of the December 1, 1999 judgment reads as follows:

> The Court having entered its judgment . . . on October 19, 1999, providing for the strict foreclosure of Land Contracts by and between Plaintiffs, as vendors and Defendants . . . as purchasers, providing the Defendants shall have thirty (30) days from October 19, 1999 to pay the Clerk of this Court the amount due under said Land Contracts recorded on September 6, 1994 . . . .
>
> That the Court having been further advised that no payment has been received by the Clerk of Court as appears by the Affidavit of Non-Redemption on file . . . .
>
> NOW, THEREFORE, the original judgment entered by this Court on October 19, 1999 be and the same hereby

> is confirmed in all respects; that any and all right, title and interest of Defendants, and each of them in the original Land Contracts between Plaintiffs and said Defendants, and any parties claiming under them, shall cease to exist and shall be and hereby are forever barred.

The judgment's date line reads, "Dated November ____, 1999." November is crossed out and "December" is handwritten over it; the ____ is filled in with "1st."

¶ 17. All the preceding hearings and judgments would have passed without notice if Patricia Steiner had not been injured on the resort property on October 15, 1999, by slipping and falling into a dry well.

¶ 18. The plaintiffs sued WAMIC in August of 2001 alleging that the Steiner Corporation was the owner of the property on October 15, 1999, and that WAMIC was responsible for paying the damages associated with her injuries. The plaintiffs later amended their complaint to include Robert Steiner and his homeowner's insurer, Mt. Morris Mutual Insurance Company (Mt. Morris) as defendants. Mt. Morris filed a cross-claim against WAMIC seeking indemnification for Robert Steiner because he was allegedly acting as an agent of Steiner Corporation when he uncovered the dry well into which Patricia Steiner fell.

¶ 19. On May 20, 2003, the circuit court held that the Steiner Corporation no longer owned the property as of October 7, 1999, and that the Corporation "had no basis on which to employ Robert Steiner and no right to control his activities." Accordingly, the circuit court granted summary judgment in favor of WAMIC and dismissed the plaintiffs' suit for personal injury.

¶ 20. The plaintiffs appealed the circuit court's judgment. The court of appeals affirmed; the plaintiffs sought review in this court.

## III

¶ 21. We now turn to the law of foreclosure of land contracts.

¶ 22. Land contracts are an important and long-standing instrument in Wisconsin real estate transactions. Land contracts provide a number of advantages for both the land contract vendor and land contract vendee. Because the land contract vendee may make a smaller down payment and avoid mortgage transaction costs, a land contract may present the vendee with the opportunity to purchase property. The land contract vendor has the advantage of greater flexibility in structuring terms, installment payments for beneficial income tax advantages, and alternative remedies in the event the vendee defaults.[10] Similarly, it has historically been faster and cheaper to foreclose a defaulted land sale contract.[11]

¶ 23. A land contract vendor holds legal title as security for the unpaid balance of the contract, while the land contract vendee holds equitable title.[12] Holding equitable title in effect gives the land contract

---

[10] Jay E. Grenig & Nathan A. Fishbach, *Methods of Practice,* 1 *Wisconsin Practice Series* § 8.3 at 275 (4th ed. 2004); Martin J. Greenberg & Henry R. Pinekenstein, *Wisconsin Land Contracts* 2–7 (1986); John S. Goodland, *Mortgage and Land Contract Foreclosures in Wisconsin* § 11.01 at 45 (1989).

[11] J.H. Beuscher, *Buying Farms on Installment Land Contracts—A Preface,* 1960 Wis. L. Rev. 379, 381 (comparing strict foreclosure of land contracts with foreclosure of real estate mortgages in 1941 and finding that it took 11 months less time and cost approximately 40% less to foreclose a land contract).

[12] *City of Milwaukee v. Greenberg,* 163 Wis. 2d 28, 36–39, 471 N.W.2d 33 (1991).

vendee "full rights" of ownership, including the ability to "sell, lease or encumber the real estate subject to the rights of the Vendor unless the contract provides to the contrary."[13] The land contract vendee has liabilities generally attributed to ownership, such as payment of taxes,[14] and is also generally liable as the owner to third parties injured on the property.[15]

¶ 24. In addition to providing parties the flexibility to set the terms of the conveyance, the land contract offers a vendor several alternative remedies should the vendee default.[16] Each remedy has advantages or disadvantages depending on the particulars of the situation. The relevant remedy in this case is strict foreclosure.

---

[13] Greenberg & Pinekenstein, *supra* note 10, at 2.

[14] *Greenberg,* 163 Wis. 2d at 37–38.

[15] *McCarty v. Covelli,* 182 Wis. 2d 342, 345–46, 514 N.W.2d 45 (Ct. App. 1994).

[16] *Kallenbach v. Lake Publ'ns, Inc.,* 30 Wis. 2d 647, 651, 142 N.W.2d 212 (1966). A land contract vendor can elect to sue for the unpaid purchase price (not an attractive option unless the land contract vendee has other assets to satisfy a judgment). *Id.* A land contract vendor can also sue for specific performance of the contract (under this option the vendor "elects to affirm the contract by having the property auctioned at judicial sale"). *Id.* If specific performance is chosen, the land contract vendor recovers only the purchase price plus costs and disbursements. *Id.* Were the property to sell for more than this amount, the land contract vendee gets any surplus. *Id.* Conversely, any shortfall between the purchase price and the sale price results in a liability for the land contract vendee. *Id. See also* Grenig & Fishbach, *supra* note 10, §§ 8.40–8.64 at 294–302.

In certain situations the vendor can declare the contract at an end and resolve the parties' rights under the land contract with a quiet-title action. *Id.*

¶ 25. Strict foreclosure is a long-standing equitable remedy in Wisconsin.[17] It is generally a faster remedy for the land contract vendor than the remedies provided a mortgagee.[18]

¶ 26. In strict foreclosure, the land contract vendor forgoes his or her right to collect the amount remaining on the debt[19] and instead recovers the property.[20] In the event of a vendee's default on a land contract, under strict foreclosure the circuit court's judgment sets a period, called the redemption period, in which the vendee must pay up or lose all his or her interest in the land.[21]

---

[17] *Exchange Corp. of Wis. v. Kuntz,* 56 Wis. 2d 555, 559, 202 N.W.2d 393 (1972); *Kallenbach,* 30 Wis. 2d at 652. For brief descriptions of the remedies, including strict foreclosure and specific performance, see Goodland, *supra* note 10, §§ 11.02–11.08 at 46–51.

[18] State of Wisconsin Real Estate Examining Board, Dep't of Regulation and Licensing, *Wisconsin Real Estate Law* 8–1 (1976) ("Here is the principal reason for the seller's choosing a land contract rather than a mortgage."). *See also* Beuscher, *supra* note 11, at 381.

[19] *Kallenbach,* 30 Wis. 2d at 657.

[20] *Kallenbach,* 30 Wis. 2d at 652 (quoting *Henry Uihlein Realty Co. v. Downtown Dev. Corp.,* 9 Wis. 2d 620, 628, 101 N.W.2d 775 (1960)); *see also Exchange Corp.,* 56 Wis. 2d at 559 ("There is no dispute that the purpose of a strict foreclosure action is to terminate any further right to perform the land contract on the part of the vendee because of his default and to confirm the legal title in the vendor free of any equitable ownership or claim under the contract of purchase.").

[21] In both specific performance and strict foreclosure actions, the circuit court usually grants the land contract vendee a redemption period in which the vendee is given the opportunity to pay the amount due. *Benkert v. Gruenewald,* 223 Wis. 44,

¶ 27. At common law, the circuit court had the discretion to set the duration of the redemption period.[22] The only limit on the operation of the circuit court's discretion was that the period had to be "reasonable" when viewed under the totality of the circumstances of the case.[23]

¶ 28. As part of Wis. Stat. § 846.30,[24] the legislature mandated that a redemption period for a land contract must be at least seven working days from the date of the judgment hearing or, if there is no hearing, from the date of the entry of the judgment order.

¶ 29. We turn now to an examination of Wis. Stat. § 846.30.

## IV

¶ 30. To understand Wis. Stat. § 846.30, we look first to the text of the statute. Wisconsin Stat. § 846.30 reads as follows:

**Redemption period for land contracts.** If a court finds that the purchaser under a land contract is

---

269 N.W. 672 (1936) (strict foreclosure); *Godwin v. Miller,* 199 Wis. 497, 226 N.W. 954 (1929) (strict foreclosure); *Dickson v. Loehr,* 126 Wis. 641, 106 N.W. 793 (1906) (strict foreclosure); *Buswell v. Peterson,* 41 Wis. 82 (1876) (strict foreclosure).

[22] Scott C. Minter & Richard J. Staff, *Wisconsin Real Estate Law* 368 (2001 ed.).

[23] *Godwin* 199 Wis. at 500.

The fixing of the period of time within which a vendee under the land contract may redeem is a matter committed to the sound discretion of the court. But the time fixed must be reasonable in view of all the circumstances of the case. Unless the time fixed is reasonable, the court abuses its discretion, and the judgment will be set aside or so modified as to prescribe a reasonable time. *Id.*

[24] 1995 Wis. Act 250, § 3 (effective May 3, 1996); *see also* Minter & Staff, *supra* note 22, at 368.

obligated to make certain payments under that land contract, that the purchaser has failed to make the required payments and that the vendor is entitled to a judgment of strict foreclosure, the court shall set a redemption period of at least 7 working days from the date of the judgment hearing or, if there is no hearing, from the date of the entry of the judgment order. No judgment of strict foreclosure is final until the court enters an order after the expiration of the redemption period confirming that no redemption has occurred and making the judgment of strict foreclosure absolute.

¶ 31. The first sentence of the statute requires, as we stated previously, that a court set a redemption period in a strict foreclosure judgment and further requires that, at a minimum, the redemption period be at least seven working days from the date of the judgment hearing or the date of the entry of the judgment order. This provision appears to be a direct reaction to an unpublished court of appeals decision, *Walker v. Dorney*, No. 1993AP2389–FT, unpublished slip op. (Wis. Ct. App. Feb. 8, 1994).

¶ 32. In *Walker*, the court of appeals affirmed a circuit court's strict foreclosure judgment that granted *no* redemption period to the land contract vendees in default. A letter in the drafting file suggested the text of the first sentence of the statute, stating: "Were it not for the Walker vs. Dorney case I would not suggest legislation—I never previously considered the possibility that a judge hearing a contested strict foreclosure action would even have the authority to issue a foreclosure judgment *without* a redemption period."[25]

---

[25] *See* January 4, 1995 Letter from Atty. Bruce A. Marshall to Representative Marty Reynolds and Senator Dave Zien found in the Drafting Records to 1995 Act 250, Legislative Reference Bureau, Madison, WI.

¶ 33. The second and final sentence of the statute, at issue today, provides the mechanism for finalizing the judgment of strict foreclosure. It reads: "No judgment of strict foreclosure is final until the court enters an order after the expiration of the redemption period confirming that no redemption has occurred and making the judgment of strict foreclosure absolute." Wisconsin Stat. § 846.30 does not explicitly address whether the final order merely confirms that title has been transferred at an earlier date or whether the final order transfers title. The parties dispute the import of this sentence, and they present alternative interpretations of the sentence.

¶ 34. WAMIC asserts that Wis. Stat. § 846.30 does not change the common law rule that a land contract vendee's equitable title automatically reverts to the land contract vendor at the end of the redemption period, so that in the present case equitable title and legal title were combined in the land contract vendors when the period of redemption expired on October 7, 1999. According to WAMIC, the final order merely "confirms" the reversion of title; the final order does not supplant the parties' substantive rights that exist at the expiration of the redemption period.

¶ 35. Conversely, the plaintiffs assert that under the common law and under Wis. Stat. § 846.30 a land contract vendee's equitable title reverts to the land contract vendor only upon entry of the final order.

¶ 36. Relevant to interpreting the final sentence of Wis. Stat. § 846.30 is the statute's impact on common law. WAMIC argues, as the court of appeals held, that because Wis. Stat. § 846.30 does not clearly indicate that the legislature intended to overrule or modify the

410

common law, the statute does not alter the common law.[26]

¶ 37. As the basis of its understanding of the common law, WAMIC relies on a passage in *Exchange Corp. of Wisconsin v. Kuntz,* a 1972 case.[27] This court said in *Exchange Corp.:*

> Normally, a decree in strict foreclosure, which at best is an unusual form of decree, finds a default on the part of the vendee, confirms absolute title in the vendor, and provides, subject to a condition subsequent, that the vendor may have to convey if the vendee pays the total purchase price within a given period of time.
>
> . . . .
>
> [T]he judgment . . . becomes final or absolute only upon the expiration of the period of redemption. Such a judgment may be considered as an interlocutory judgment which automatically becomes final upon the expiration of the period of redemption without any further motion or decree making it absolute. If the record is to reflect the fact the vendee did not redeem, an order may be entered finding the vendee did not meet the conditions; sometimes an affidavit of such fact is filed.

[26] *Gaugert v. Duve,* 2001 WI 83, ¶ 41, 244 Wis. 2d 691, 628 N.W.2d 861 (a rule of statutory interpretation is that the legislature's intent to change the common law must be clearly expressed).

The rule that statutes changing the common law must do so through a clear legislative expression and must be interpreted narrowly is a rule that has been the object of a great deal of criticism as hindering legislative change and as having no analytical or philosophical justification. *See* 3 Norman J. Singer, *Statutes and Statutory Construction* § 61:4 (5th ed. Supp. 2001).

[27] *Exchange Corp. of Wis. v. Kuntz,* 56 Wis. 2d 555, 202 N.W.2d 393 (1972).

But if the order is used, it would normally not confirm the title but merely reaffirm the legal title in the vendor.[28]

¶ 38. In essence, the judgment, under *Exchange Corp.*, is an interlocutory judgment that automatically becomes final on the expiration of the redemption period. That is, the parties need take no further action to affect title; failure of the vendee to redeem means the vendor has complete title.

¶ 39. The *Exchange Corp.* court also concluded that a circuit court could extend the period of redemption if the current period of redemption had not yet expired, but once the period expired, the period of redemption could not be extended unless the circuit court had reserved the power to do so.

¶ 40. WAMIC is correct: *Exchange Corp.* can be viewed as holding that when a vendee is in breach of a land contract and the circuit court has entered a strict foreclosure judgment, title vests in the vendor without any further action of the parties or the circuit court should the vendee fail to pay the full purchase price during the redemption period set by the court. WAMIC's position is supported by at least two property treatises that state that upon expiration of the redemption period, the land contract vendee's equitable rights in the property are cut off, and the vendor is the sole owner of the property.[29]

¶ 41. Given this, WAMIC asserts that the failure of Wis. Stat. § 846.30 to mention any change from the

---

[28] *Id.* at 560–61.

[29] *See, e.g.,* 15 *Powell on Real Property,* § 84.D.03[3] at 84D-35 (Rel. 79-6/97 Pub. 550) (Michael Allan Wolf ed. 2000); 12 *Thompson on Real Property* § 100.08(c) at 312 (David A. Thomas ed. 1994).

common law rule announced in *Exchange Corp.* about when title passes under a defaulted land contract must mean that the common law still stands and any circuit court order subsequent to the judgment is merely a confirmation that equitable title has already passed to the vendor.

¶ 42. The plaintiffs dispute WAMIC's reading of the common law under *Exchange Corp.* They contend that in a defaulted land contract, equitable title does not automatically revert to the land contract vendor at the end of the redemption period absent any additional court action. The plaintiffs rely on a 1937 case, *St. Joseph's Hospital v. Maternity Hospital,* as a declaration of the common law.[30] In *St. Joseph's Hospital,* the court concluded, "A judgment of strict foreclosure of a land contract does not produce absolute finality. In such judgments, a subsequent order barring the defendant's interest and claims for want of redemption is essential in order to declare and quiet title in the plaintiff . . . ."[31] The *St. Joseph's Hospital* court declared that because the strict foreclosure judgment was not absolute, a court has equitable power to allow a land contract vendee to pay under the land contract, even if the vendee had failed to pay before expiration of the redemption period.[32]

¶ 43. The plaintiffs are correct: *St. Joseph's Hospital* demonstrates that the land contract vendee's equitable ownership interest does not automatically transfer to the vendor; a judicial decree is needed. According to *St. Joseph's Hospital,* if the land contract

---

[30] *St. Joseph's Hosp. v. Maternity Hosp.,* 224 Wis. 422, 272 N.W.669 (1937).

[31] *St. Joseph's Hosp.,* 224 Wis. at 430.

[32] *St. Joseph's Hosp.,* 224 Wis. at 430.

413

vendee's equitable ownership interest had automatically transferred to the vendor upon expiration of the redemption period, the court would not have been able to allow the vendee's interest in the property to continue after expiration of the redemption period.

¶ 44. Although cases subsequent to *St. Joseph's Hospital* have expressed reservations about the continued vitality of the *St. Joseph's Hospital* rule,[33] the plaintiffs argue that *St. Joseph's Hospital* was the basis for the second and final sentence of Wis. Stat. § 846.30. The plaintiffs assert that the sentence is a codification of *St. Joseph's Hospital* and establishes that equitable title to property in a land contract remains with the land contract vendee, despite strict foreclosure and despite nonredemption by the vendee, until a circuit court enters a final order declaring title in the land contract vendor.

¶ 45. The first sentence of Wis. Stat. § 846.30 is not a substantial change from the common law. All that the first sentence does is place a limit on a circuit court's discretion in setting a period of redemption. A circuit court cannot completely deny a period of redemption; the redemption period must be, at a mini-

---

[33] *See Exchange Corp.*, 56 Wis. 2d at 562 ("Broader dicta in the *St. Joseph's Hospital Case* to the effect the court of equity has inherent jurisdiction after the expiration of the period of redemption without reserving such power is disapproved."); *Kallenbach*, 30 Wis. 2d at 656 (the power the circuit court exercised in *St. Joseph's Hospital* is contrary to the general rule).

WAMIC and *Exchange Corp.* limit the significance of *St. Joseph's Hospital*, which was decided in the shadow of the Great Depression. They assume that the balance of equities tilted toward the land contract vendee in that case because of the special circumstances of the period.

mum, seven working days. Courts still have significant control in setting redemption periods, just as before the enactment of § 846.30; the standard continues to be reasonableness in light of the circumstances.[34]

¶ 46. It is not clear whether the second and final sentence of Wis. Stat. § 846.30 alters the common law, because the common law is not clear. It is not clear that *Exchange Corp.* altered the portion of *St. Joseph's Hospital* upon which the plaintiffs rely, despite language in *Exchange Corp.* disapproving "broader dicta" in *St. Joseph's Hospital.*[35] As discussed previously, *Exchange Corp.* suggests equitable title automatically reverts to the vendor without any court order; *St. Joseph's Hospital* suggests that equitable title reverts to the vendor only upon entry of a final court order.

¶ 47. The last sentence of § 846.30 can be read as WAMIC reads it, that is, as addressing only when a strict foreclosure judgment becomes final, but not addressing the transfer of title. Therefore, the order entered can be viewed under *Exchange Corp.* as providing finality by confirming a transfer of title to the vendor that has already occurred. Alternatively, the required order in the last sentence of § 846.30 can be read as the plaintiffs read it, that is, as establishing the date on which a land contract vendee's equitable title reverts to the vendor. This reading would be consistent with *St. Joseph's Hospital.*

¶ 48. Given that the common law is not clear on when equitable title reverts to a land contract vendor, we turn to the practice of attorneys in land contract foreclosure, as well as the legislative drafting records, to cast light on the meaning of Wis. Stat. § 846.30.

---

[34] *Godwin,* 199 Wis. at 497.

[35] *Exchange Corp.,* 56 Wis. 2d at 562.

¶ 49. Apparently, the practice before the 1995 adoption of Wis. Stat. § 846.30 was for a land contract vendor to obtain a final judgment after the expiration of the redemption period upon filing an affidavit of non-redemption. A 1989 practice manual on land contract foreclosures includes a form for a final judgment in a strict foreclosure of a land contract which states that the final judgment confirms the original judgment and proclaims that "any right, title and interest" of the land contract vendees "shall cease to exist and shall be and hereby are forever barred."[36] This practice suggests that the final judgment or order confirming the strict foreclosure judgment performs a much more significant role than just reaffirming something everyone already knows, namely that equitable title has been vested in the vendor. This final judgment would be needed to clear record title to determine whether the land contract vendee paid the amount due during the redemption period.

¶ 50. The drafting record for Wis. Stat. § 846.30 decidedly supports the plaintiffs' position that if a land contract vendee fails to redeem, the equitable title of the land contract vendee does not pass to the land contract vendor until a circuit court enters an order after the expiration of the redemption period confirm-

---

[36] Goodland, *supra* note 10, at A-91.

For a similar form of confirmation of judgment suggested in 2004, *see* Grenig & Fishbach, *supra* note 10, Form 8–12 at 324.

*See also* Grenig & Fishbach, *supra* note 10, § 8.53 at 298. The circuit court enters the order confirming the judgment upon an affidavit of nonredemption; the order should be recorded in the office of the register of deeds in the county where the land is located.

416

ing nonredemption.[37] The court of appeals interpreted § 846.30 without examining the drafting record.

¶ 51. The most relevant document in the drafting file on the issue presented in the instant case is a September 29, 1995 letter from the Chicago Title Insurance Company to Atty. Peter Christianson, suggesting what would become the last sentence of Wis. Stat. § 846.30. The letter explains that the purpose of requiring "a final order" is to make the statute consistent with *St. Joseph's Hospital*.[38] As far as the drafters of § 846.30 were concerned, the *St. Joseph's Hospital* case was still in full force and effect. The letter does not mention *Exchange Corp.*

¶ 52. The letter reads in relevant part:

> This bill formalizes the requirement for a redemption period after a judgment of strict foreclosure. Such a right has been recognized under [*Godwin* and *Kallenbach*]. However, the bill overlooks the requirement for a final order established under *St. Joseph's Hospital* . . . , which states at page 430: "A judgment of strict foreclosure of a land contract does not produce absolute finality. In such judgments, a subsequent order barring the defendant's interest and claims for want of redemption is essential in order to declare and quiet title in the plaintiff . . . ."

> We should take this opportunity to propose that AB 579 be amended to include a requirement for a final order. This can be done very simply by adding the following language as part of proposed Section 846.30, Wisconsin Statutes, or as a new section:

> *No judgment of strict foreclosure shall be final until the entry of an order, after the expiration of the redemption*

---

[37] Drafting Records for 1995 Wis. Act 250 (available at the Legislative Reference Bureau, Madison, Wisconsin).

[38] *Id.*

*period, confirming that no redemption has been made
and making the judgment of strict foreclosure absolute*
(emphasis added).

¶ 53. Representative Marty Reynolds requested that the Legislative Reference Bureau draft legislation based on the problems discussed in the Chicago Title Insurance Company letter.

¶ 54. The suggested change makes sense from the perspective of a title insurance company. A title insurance company would be interested in pinpointing, to the extent possible, the date on which a land contract vendee's equitable title passes to the vendor. A circuit court order creates certainty, finality, and clarity for passage of title, easing the task of examining real property records to determine and insure ownership. A title insurance company's interest in clarity and finality of the rights and interests of the parties to the land contract is especially strong because, as we discussed above, the case law is confusing concerning rights and interests in the event of strict foreclosure and failure to redeem. In light of the *Exchange Corp.* and *St. Joseph Hospital* cases, clarification of when a land contract vendee's equitable interest reverts to the vendor should be welcome.

¶ 55. On the basis of the text of Wis. Stat. § 846.30, the case law, Wisconsin practice, and legislative history, we are persuaded that § 846.30 requires that in strict foreclosure a circuit court must issue a final order to confirm a land contract vendee's failure to redeem prior to the expiration of the redemption period, and that only upon entry of the final order does a land contract vendee's equitable title revert to the land contract vendor.

¶ 56. The court of appeals reached a different interpretation of Wis. Stat. § 846.30 based on three additional considerations, none of which we consider persuasive enough to convince us that our interpretation of Wis. Stat. § 846.30 is misplaced.

¶ 57. First, the court of appeals held that the plaintiffs' interpretation of Wis. Stat. § 846.30 that equitable title reverts to the vendor only upon the final order would create an illogical result. According to the court of appeals, an indefinite period of time may elapse between the end of the redemption period and the order transferring title, during which the land contract vendee remains the equitable owner with all the rights and responsibilities thereof. This result is not illogical. This situation is similar to a foreclosure on a mortgage when there is a period between the end of the redemption period and a sheriff's sale; the mortgagor holds title.

¶ 58. Second and related to the first point, the court of appeals concluded that "the date on which the confirming order is entered would not be tied, either by statute or by practical realities, to the actual situations of the vendor and vendee." The transfer of equitable title should depend, according to the court of appeals, on what is happening between the parties, not on when an order is presented to the court and when a court may sign and enter it. We disagree with the court of appeals. It is not always clear what is happening between the parties. Take the instant case, for example. Three different dates of passage of equitable title are possible: October 7, November 17, and December 1. For anyone interested in clear title, determining where title rests during the confusion created by the parties' actions may

be a daunting task indeed. The facts of this case demonstrate that title reverting only upon a final court order makes sense.

¶ 59. The court of appeals' final consideration is that although under its interpretation of Wis. Stat. § 846.30 the confirming order does not establish the date of transfer of title, it does add a measure of certainty and predictability that did not exist at common law.

¶ 60. We agree with the court of appeals that the second and final sentence of Wis. Stat. § 846.30 appears to have been designed to add certainty and predictability to strict foreclosures by characterizing the order as final and absolute. We part company with the court of appeals, however, because its interpretation of § 846.30 disrupts certainty and predictability by mandating that a land contract vendee's equitable title reverts to the vendor at the expiration of the redemption period without any court order. The instant case illustrates the uncertainty that can occur and the importance of a court order that definitively establishes the rights and interests of the parties.

■

¶ 61. For the reasons set forth, we hold that under Wis. Stat. § 846.30, equitable title remains with a land contract vendee until a circuit court enters an order pursuant to § 846.30 confirming the land contract vendee's default, following the expiration of the redemption period for strict foreclosure.

## V

■

¶ 62. We now turn to the instant case and apply Wis. Stat. § 846.30: The land contract vendee's equi-

table title reverts to the land contract vendor on the entering of a final order in a strict foreclosure proceeding.

¶ 63. Although the facts are undisputed for purposes of a motion for summary judgment, we must examine the circuit court judgments and orders closely. There are inconsistencies in the proceedings, some of which were on the record in the circuit court and others of which were not.

¶ 64. The first hearing on the strict foreclosure action took place on September 7, 1999. According to the transcript of the proceedings, the court ordered the remedy of specific performance, not strict foreclosure, and set a redemption date of October 7, 1999. It held that if the Steiner Corporation did not redeem before that time, the property would be sold at a sheriff's sale.

¶ 65. The Steiner Corporation did not redeem in the 30–day redemption period set to expire on October 7, 1999, nor was the property sold by sheriff's sale. Therefore, the remedy of specific performance was not effectuated. Instead, the parties returned to court on October 19, 1999. At the October 19, 1999 hearing, the circuit court entered a judgment of strict foreclosure, ordering (retroactively) October 7, 1999, as the redemption date.

¶ 66. The date of October 7, 1999 is inconsistent with Wis. Stat. § 846.30. Wisconsin Stat. § 846.30 requires at a minimum a seven working day redemption period *"from the date of the judgment hearing or, if there is no hearing, from the date of the judgment order."* Regardless of the nature of the October 19 hearing and "Findings of Fact and Conclusions of Law," the redemption period under Wis. Stat. § 846.30 can be construed as expiring no earlier than October 28, 1999, seven

421

working days from the October 19 hearing, or as expiring no earlier than November 18, 30 days from October 19.

¶ 67. Another hearing on the matter was held on December 1, 1999, and resulted in a document entitled "Final Judgment." That document confirmed the October 19, 1999 order "in all respects" and stated "all right, title and interest of [the land contract vendees] . . . shall cease to exist."

¶ 68. The court of appeals concluded that "the only reasonable explanation" for the discrepancies of the redemption dates in the documents of this matter "is that the period of redemption described in the December 1 final judgment is a mistake." According to the court of appeals, the parties agreed to change the remedy to strict foreclosure after September 7 and before the judgment entered on October 19 but agreed to use the same 30–day redemption period established by the court on September 7 for a sale. Under this reasoning the redemption period expired on October 7, 1999.[39] There is no support in the record for the court of appeals' explanation of the discrepancy.

¶ 69. Regardless of possible explanations for the numerous conflicting dates, we conclude under our interpretation of Wis. Stat. § 846.30 that the equitable title of the Steiner Corporation (the land contract vendee) did not revert to the land contract vendors until December 1, 1999, the date of the final order. Thus, Steiner Corporation had equitable title to the property as vendee under the land contract when Patricia Steiner fell in the dry well on October 15, 1999.

[39] *Steiner v. Wis. Am. Mut. Ins. Co.*, 2004 WI App 135, ¶¶ 15, 17, 275 Wis.2d 359, 685 N.W.2d 83.

## VI

¶ 70. The parties disagree whether Robert Steiner was an agent of Steiner Corporation at the time of the accident. If he was, his allegedly negligent actions (leaving the well uncovered) would be imputed to the Corporation and WAMIC would, according to plaintiffs, be required to indemnify him for Patricia's injuries.

¶ 71. The injury is alleged to have occurred as follows:

¶ 72. Robert Steiner, despite having sold his interest in the land, continued to perform maintenance at the resort, including draining water from the cabins in preparation for winter. The procedure, which Robert was following on October 15, 1999, was to drain the water from the cabins into dry wells. Covering each dry well was a removable wood cover, under which was a piece of Styrofoam. The wood cover protected the well should a car or other large object traverse it; the Styrofoam cover underneath was meant to keep the water from freezing. Robert Steiner had removed the wood coverings from some of the dry wells, but not the Styrofoam coverings.

¶ 73. Patricia Steiner, concerned about her husband, approached a dry well to see if he had fallen in. She noticed that the Styrofoam covering was still in place, but when she turned away from the well she slipped and fell into the dry well.

¶ 74. Robert Steiner heard Patricia Steiner's cries for help and found her wedged into the bottom of a dry well. She sustained a variety of personal injuries.

¶ 75. Neither the circuit court nor the court of appeals addressed Robert Steiner's possible status as an agent of the Steiner Corporation. Likewise, we will not address that issue here.

* * * *

¶ 76. In summary, we hold that equitable title remains with a land contract vendee until a circuit court enters a final order, following the expiration of the redemption period for strict foreclosure, confirming the land contract vendee's failure to redeem. As a result, in the present case equitable title did not pass from the Steiner Corporation (the land contract vendee) to the land contract vendors until December 1, 1999, when an order confirming the nonredemption was entered. Accordingly, the Corporation had equitable title to the property under the land contract on October 15, 1999, the date of the plaintiffs' injuries, and the Corporation and WAMIC, its insurer, may be subject to liability for the plaintiffs' injuries.

¶ 77. We therefore reverse the decision of the court of appeals and remand the cause to the circuit court for further proceedings consistent with this decision.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded.

¶ 78. JON P. WILCOX, J. (*dissenting*). I disagree with the majority's conclusion that "under Wis. Stat. § 846.30 [2000–01[1]] equitable title remains with a land contract vendee until a circuit court enters a final order, following the redemption period for strict foreclosure, confirming the land contract vendee's nonredemption." Majority op., ¶ 4. I would hold that under § 846.30, equitable title on a land contract passes as a matter of law following the vendee's nonpayment at the end of the redemption period, as established by the land contract

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

or a previously issued court order for strict foreclosure. While the circuit court is required under the statute to enter a final order confirming the vendee's nonredemption, such order is not required in order for title to pass.

¶ 79. This position is in accordance with the common law governing land contracts, which, contrary to the majority's assertion, majority op., ¶ 46, was quite clear. The common law governing the passage of title for land contracts was shaped primarily by two cases: *St. Joseph's Hospital v. Maternity Hospital,* 224 Wis. 422, 273 N.W.791 (1937), and *Exchange Corporation of Wisconsin v. Kuntz,* 56 Wis. 2d 555, 202 N.W.2d 393 (1972).

¶ 80. The issue in *St. Joseph's Hospital* was whether a circuit court had power in a strict foreclosure action to extend the period of redemption before that period expired. *St. Joseph's Hosp.,* 224 Wis. at 424–425. In addressing this issue, the court stated:

> A judgment of strict foreclosure of a land contract does not produce absolute finality. In such judgments, a subsequent order barring the defendant's interest and claims for want of redemption is essential in order to declare and quiet title in the plaintiff, and a writ for removing the defendant from the premises is contemplated in case it becomes necessary. Proceedings at the foot of the judgment are a matter of course in these cases and the litigation is not at an end until they are taken. It would seem, a priori, that until the final order contemplated, an order making the judgment absolute, has been entered, anything discretionary might properly be done by the court that has material bearing upon the equities of the parties respecting the order finally ending the litigation between them. Independent of a statute providing for extension in strict foreclosure cases of the period of redemption from judgments not become absolute, a court as a court of

> equity would unquestionably have power to extend in effect the period of redemption provided for in its judgment if such extension were required by equity and good conscience.

*Id.* at 430.

¶ 81. This language from *St. Joseph's Hospital* can be read in one of two ways. First, it could be interpreted as holding that equitable title in a land contract does not pass at the end of the redemption period in a strict foreclosure action, but requires a final order confirming that title had passed because the court retains the power to extend the redemption period until a final order is entered confirming a judgment of strict foreclosure. However, such a broad ruling would seem unnecessary in light of the facts in *St. Joseph's Hospital* because there, the challenged circuit court order was an order extending the period of redemption on a land contract *before* the original period of redemption had expired. *Id.* at 424. Thus, *St. Joseph's Hospital* could be read as simply providing that in an action for strict foreclosure, a court retains the equitable power to extend the period of redemption before a final order is issued, assuming the redemption period has not yet run.

¶ 82. Whatever confusion existed as to the scope of the holding in *St. Joseph's Hospital* was put to rest in *Exchange Corporation,* which explained and clarified the meaning of the above passage from *St. Joseph's Hospital.* In *Exchange Corporation,* 56 Wis. 2d at 562, when discussing strict foreclosure judgments, this court held:

> A strict foreclosure judgment is of such a nature that the court must be considered as having the power to control the judgment even beyond a term of court to the extent *the period of redemption may be extended on*

426

*equitable grounds if an application for extension is made prior to the expiration of the period; the judgment did not reserve this power for it becomes final or absolute only upon the expiration of the period of redemption.* Such a judgment may be considered as an interlocutory judgment which *automatically becomes final upon the expiration of the period of redemption without any further motion or decree making it absolute.* If the record is to reflect the fact the vendee did not redeem, *an order may be entered finding the vendee did not meet the conditions;* sometimes an affidavit of such fact is filed. *But if the order is used, it would normally not confirm the title but merely reaffirm the legal title in the vendor.* It is possible for a court to reserve power to extend the period of redemption even after the original period of redemption has expired, in which case it would have power to extend time even without the vendee's application prior to expiration of the original period. If the court does reserve this power, a subsequent order would seem necessary to finally terminate any possible rights in the vendee; but this would be an unusual case.

*Id.* at 561–62 (emphasis added). In so holding the court expressly stated: *"Broader dicta in the St. Joseph's Hospital Case to the effect the court of equity has inherent jurisdiction after the expiration of the period of redemption without reserving such power is disapproved." Id.* at 562 (emphasis added). Thus, *Exchange Corporation* explained that a narrow reading of *St. Joseph's Hospital* was correct and it disapproved any dicta suggesting a broader holding that title in a land contract passes only upon the circuit court entering a final order indicating that title has passed.

¶ 83. The following rules governing the passage of title on land contracts in strict foreclosure actions are apparent from *Exchange Corporation.* First, "the period of redemption may be extended on equitable grounds if an application for extension is made prior to the expira-

tion of the period[.]" *Id.* at 561. Second, the period of redemption may be extended *after* the original redemption period has expired only if the court expressly "reserve[d] power to extend the period of redemption even after the original period of redemption has expired." *Id.* at 561–62. Third, if the original judgment of strict foreclosure did not expressly reserve the power to extend the redemption period after the redemption period had expired and no application was made to extend the period of redemption before it expired, the judgment "automatically becomes final upon the expiration of the period of redemption without any further motion or decree making it absolute." *Id.* at 561. In this third scenario, although "an order may be entered finding the vendee did not meet the conditions[,] . . . [the order] would normally not confirm the title but merely reaffirm the legal title in the vendor." *Id.* Thus, such an order merely effects record title; it is not a prerequisite for the title to pass in the first instance. Title passes as a matter of law at the end of the redemption period. The only time a final order is *required* for title to pass is where the judgment of strict foreclosure reserved the right of the circuit court to extend the period of redemption after the redemption period has expired.

¶ 84. With these common-law rules in mind, I now turn and examine § 846.30, which provides:

> If a court finds that the purchaser under a land contract is obligated to make certain payments under that land contract, that the purchaser has failed to make the required payments and that the vendor is entitled to a judgment of strict foreclosure, the court shall set a redemption period of at least 7 working days from the date of the judgment hearing or, if there is no hearing, from the date of the entry of the judgment order. No judgment of strict foreclosure is final until the court enters an order after the expiration of the redemp-

428

tion period confirming that no redemption has occurred and making the judgment of strict foreclosure absolute.

Wis. Stat. § 846.30.

¶ 85. I am not persuaded by the majority's discussion of legislative history that the last sentence of § 846.30 was intended to overrule this court's decision in *Exchange Corporation* and treat land contracts similar to mortgages. Majority op., ¶¶ 50–53, 57. Section § 846.30 was enacted as 1995 Wis. Act 250. The legislative history of the Act indicates that its purpose was twofold. First, the Act was intended to require a mandatory minimum redemption period in an action for strict foreclosure, as existing law did not mandate that a redemption period exist and an unpublished court of appeals decision had recently held that there was no right to a redemption period. Second, the Act was intended to codify "existing case law requirements" in relation to the need for a final order in a strict foreclosure action.

¶ 86. At the time 1995 Wis. Act 250 was enacted, the law governing the passage of title and need for a final order was that as explained by *Exchange Corporation,* which clarified the holding of *St. Joseph's Hospital.* Nothing in the legislative history of 1995 Wis. Act 250 evinces an intent to overrule *Exchange Corporation.* Quite the opposite, the goal was to codify "existing case law requirements." While the intent of the legislation was to require a final order, it is *Exchange Corporation* that sets forth the effect of such an order.

¶ 87. As such, I would interpret the last sentence of § 846.30 in accordance with the rules set forth by this court in *Exchange Corporation* and hold that equitable title on a land contract passes as a matter of law following the vendee's nonpayment at the end of the redemption period for strict foreclosure. A final order

merely reaffirms that title has indeed passed; however, in doing so, it provides clarity and certainty to third parties about legal title. In addition to being consistent with our common law, this interpretation avoids the inequitable result that a land contract vendee who has failed to pay at the end of the redemption period will still hold title to the land until the circuit court enters a final order. Majority op., ¶ 57.

¶ 88. Finally, even if the last sentence of § 846.30 is viewed as overturning the portion of *Exchange Corporation* that holds that equitable title on a land contract passes as a matter of law following the vendee's nonpayment at the end of the redemption period for strict foreclosure, § 846.30 does not affect the remainder of the opinion. That is, even if a final order is required before title may pass, under *Exchange Corporation,* the circuit court does not have the power to extend the period of redemption once the period of redemption has expired, unless the judgment of strict foreclosure reserved such a power. *Exch. Corp.,* 56 Wis. 2d at 561–62. As the text of § 846.30 does not state differently, this portion of *Exchange Corporation* remains good law. As such, if the period of redemption has expired and the vendee has not made payment, the circuit court may not subsequently extend the period of redemption unless its judgment of strict foreclosure reserved such a power.

¶ 89. For the foregoing reasons, I respectfully dissent.

¶ 90. I am authorized to state that Justice PATIENCE DRAKE ROGGENSACK joins this dissent.