# COURT OF APPEALS
## DECISION
## DATED AND FILED

## March 24, 2026

Samuel A. Christensen
Clerk of Court of Appeals

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP1738**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022CV53

**IN COURT OF APPEALS
DISTRICT III**

CRS PROPERTIES LLC,

    PLAINTIFF-RESPONDENT,

  V.

WILLIAM J. MOSSUTO AND LISA MOSSUTO,

    DEFENDANTS-APPELLANTS,

SAWYER COUNTY,

    DEFENDANT,

  V.

CARL CHRISTENSEN, CR CONTRACTING, LLC AND CAROL L. CHRISTENSEN,

    THIRD-PARTY DEFENDANTS-RESPONDENTS.

APPEAL from a judgment of the circuit court for Sawyer County: MONICA M. ISHAM, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. William and Lisa Mossuto (husband and wife) appeal from a summary judgment that granted CRS Properties LLC strict foreclosure on a parcel of land subject to an amended land contract between the parties and that dismissed the Mossutos' counterclaims against CRS Properties and third-party claims against two employees of CRS Properties. The issues on appeal are: (1) whether all of the Mossutos' claims were barred by statutes of limitations; (2) if not, whether there were material factual disputes regarding the Mossutos' claims; and (3) whether there were material facts in dispute regarding the Mossutos' default status that would preclude strict foreclosure. We affirm.

## BACKGROUND

¶2    Pursuant to a land contract recorded in Sawyer County on June 28, 2013, William Mossuto agreed to buy a parcel of land encompassing several lots from CRS Properties. Under this original contract, William was to pay CRS Properties $65,000 with interest at a rate of 6% per annum, in monthly installments of $635 for 12 years, so that the purchase would be completed by June 1, 2025. William could take possession of the property upon closing, but title to the property would not be conveyed until full performance of the contract by William.

¶3    The original contract required William to "pay prior to delinquency all taxes and assessments levied on the Property," to "keep the improvements on the Property insured against loss or damage occasioned by fire" or other hazards, and to "pay the insurance premiums when due." However, the contract also required

William to pay CRS Properties an additional $65 per month toward property taxes and insurance. Any payments William made were to "be applied first to interest on the unpaid balance at the rate specified and then to principal." CRS Properties would have the right to pursue strict foreclosure in the event of any default in the payment of principal or interest continuing for more than 30 days.

¶4 On October 25, 2014, a fire destroyed a home located on the property. The property was uninsured at the time of the fire. As a result of this loss, the parties amended the land contract.

¶5 Under the amended land contract, which was recorded on February 4, 2015, CRS Properties agreed to loan $55,000 to William and his wife (who was added to the contract) so they could reconstruct a new home on the property, making the total principal due on the contract $120,000. The interest rate was increased to 6.25% per annum, and the monthly installment for interest and principal was increased to $800, with the outstanding principal and interest still to be paid in full by June 1, 2025. The Mossutos were also to make an additional $50 payment each month to be "used for the payment of homeowner's insurance and real estate taxes." All other terms of the original land contract were to remain in effect.

¶6 William paid CRS Properties $7,000 between July 1, 2013, and December 31, 2014, while the original land contract was in effect, and another $55,830 between January 1, 2015, and August 1, 2021, on behalf of himself and his wife, while the amended land contract was in effect. All of the Mossutos' payments were applied to principal and interest.

¶7 CRS Properties paid the property tax bills for 2013, 2014, and 2018. The Mossutos paid $3,678.64 in property taxes while the amended land contract was in effect. CRS Properties alleged that it paid premiums to keep an insurance

policy in place on the property from 2015 onward; however, it could produce receipts from only 2019 forward. The Mossutos disputed at what time CRS Properties had obtained insurance coverage for the property.

¶8 On May 26, 2022, CRS Properties filed a strict foreclosure action against the Mossutos to recover the property. CRS Properties alleged that the Mossutos had not made any payment on the amended land contract for over nine months.

¶9 The Mossutos filed counterclaims against CRS Properties for intentional misrepresentation, strict responsibility misrepresentation, negligent misrepresentation, property loss through fraudulent misrepresentation, civil theft, slander of title, a violation of the Wisconsin Organized Crime Control Act, declaratory judgment, and unjust enrichment. The Mossutos also filed a third-party complaint against CRS Properties employees Carl Christensen and Carol Christensen for breach of contract and civil theft. Broadly speaking, the Mossutos' counterclaims and third-party claims were all premised on allegations that CRS Properties and/or its employees had represented that CRS Properties would pay the insurance premiums and property taxes but had taken the Mossutos' payments intended for those purposes without doing so. As a result of the allegedly misapplied payments and CRS Properties' failure to insure the property under the original land contract, the Mossutos alleged that they had suffered the loss of the house and incurred additional costs under the second amended land contract.

¶10 The parties filed cross-motions for summary judgment, supported by briefs, depositions, and affidavits. Following two hearings, the circuit court denied the Mossutos' motion for summary judgment on their counterclaims and third-party

claims, and it granted CRS Properties' summary judgment motions for strict foreclosure and for the dismissal of all the Mossutos' claims.

¶11     As to the Mossutos' claims, the circuit court found both that they were barred by the applicable statutes of limitations and that the facts alleged did not support the elements of the claims. As to the strict foreclosure, the court made factual findings that the Mossutos had defaulted on the payments for the amended land contract for a period of more than 30 days and owed a redemption amount of $132,910.73 in outstanding principal and interest. The court ordered that if the Mossutos did not pay the full redemption amount within a period of 30 days, they would be "forever barred of all right, title and interest as to the premises described" in the amended land contract.

¶12     On appeal, the Mossutos challenge the circuit court's summary judgment decisions on both the dismissal of their claims and the strict foreclosure.

## DISCUSSION

¶13     This court reviews summary judgment decisions de novo, applying the same legal standard and methodology employed by the circuit court. *Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503. The legal standard is whether there are any material facts in dispute that entitle the opposing party to a trial. *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶24, 241 Wis. 2d 804, 623 N.W.2d 751. Our methodology begins with an examination of the pleadings to determine whether the complaint states a claim and the answer joins issue. *State v. Dunn*, 213 Wis. 2d 363, 368, 570 N.W.2d 614 (Ct. App. 1997). Assuming the pleadings are sufficient, we then examine the moving party's supporting materials (such as depositions, answers to interrogatories, admissions, and affidavits) to determine whether they establish a prima facie case for summary

judgment, and if so, whether the materials submitted by the opposing party are sufficient to place in dispute any material facts that would require a trial. *Id.*; *see also* WIS. STAT. § 802.08(2) (2023-24).[1]

¶14 Whether a complaint has been timely filed is a threshold question in deciding whether the complaint states a claim upon which relief could be granted, because an otherwise sufficient claim will be dismissed if it is time barred. *John Doe 1 v. Archdiocese of Milwaukee*, 2007 WI 95, ¶15, 303 Wis. 2d 34, 734 N.W.2d 827; WIS. STAT. § 893.05. The first issue before us, then, is whether the Mossutos' counterclaims and third-party claims were barred by statutes of limitations.

¶15 A statute of limitations requires a claim to be brought within a specified period of time after it has accrued—that is, when there exists a claim capable of enforcement, a suitable party against whom it may be enforced, and a party with a present right to enforce it. *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 302, 315, 533 N.W.2d 780 (1995); *see also* WIS. STAT. § 893.04. A party has a right to enforce a claim when the party has suffered actual damage, defined as harm that has already occurred or is reasonably certain to occur in the future. *Pritzlaff*, 194 Wis. 2d at 315. Under the discovery rule, a statute of limitations may be tolled until a claimant has sufficient evidence (or should have discovered such evidence in the exercise of reasonable diligence) to believe that a wrong had been committed by an identified person or entity. *Id.* at 315-16.

¶16 Here, neither party has specifically identified in their brief(s) the relevant statutory limitation period for each of the twelve claims the Mossutos raised in their counterclaims and third-party complaint, other than by reference to a chart

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

filed in the circuit court, which does not cite all of the relevant statutes. Nonetheless, the parties appear to agree that all of the claims at issue would have either a three or six-year statutory limitation period, unless tolled. Because it makes no difference to the outcome of this case, we will assume for the sake of argument that all of the Mossutos' counterclaims and third-party claims have a six-year statute of limitations.

¶17 The bulk of the Mossutos' counterclaims and third-party claims were premised on the theory that CRS Properties' failure to use payments William Mossuto had made to CRS Properties to buy insurance while the original land contract was in effect, resulted in the uninsured loss of their home and the need to enter into an amended land contract with less favorable terms. The Mossutos alleged damages on these claims in the amounts of $57,450 from having to take out a loan to build the second house; $25,883.83 in additional interest already paid under the amended land contract; and $78,865.89 in future interest due under the amended land contract. The Mossutos made additional claims for damages in the amount of $3,900 for "misapplied" payments made throughout the duration of both the original and amended land contracts that were credited against the balance the Mossutos owed on delinquent principal and interest, rather than used to either purchase insurance or pay property taxes.

¶18 We are satisfied that the Mossutos had all of the information they needed to assert their counterclaims and third-party claims related to the loss of their home and the need to enter into a less favorable land contract by the time they signed the amended land contract. Specifically, they knew at that time that CRS Properties had not been using William Mossuto's payments under the original land contract to purchase insurance; that the Mossutos had suffered a $57,450 uninsured loss; and that they would be required to pay an additional $104,749.72 in interest under the

amended land contract. Those claims therefore accrued on January 20, 2015, and were time barred by January 20, 2021, unless tolled.

¶19 The Mossutos contend that the statutes of limitations on these claims were tolled by the continuing violation doctrine. That doctrine is inapplicable for at least two reasons, however.

¶20 First, the continuing violation doctrine holds that the statute of limitations on a criminal offense that is designated by statute as eligible to be prosecuted as a single count rather than multiple counts does not begin to run "until the last act is done which viewed by itself is a crime." *State v. Elverman*, 2015 WI 91, ¶28, 366 Wis. 2d 169, 873 N.W.2d 528 (citation omitted). The Mossutos have cited no cases in which the doctrine ever has been used to toll the statute of limitations for a civil claim. This court need not address arguments that are not supported by citation to relevant authority. *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶21 Second, even if the continuing violation doctrine could be applied to civil claims, CRS Properties' alleged failure to use the monthly $50 payments from the Mossutos to pay insurance premiums and property taxes under the amended land contract is distinct from any claim for damages arising from CRS Properties' alleged failure to use the monthly $65 payments from William Mossuto to pay insurance premiums under the original land contract. The claims involve alleged breaches of different contract provisions, not repeated breaches of the same original contract provision.

¶22 The Mossutos did not file their counterclaims and third-party complaint until March 22, 2023, well over six years after they had signed the amended land contract on January 20, 2015. We conclude that all counterclaims

8

and third-party claims seeking damages arising out of CRS Properties' failure to pay insurance premiums under the original land contract (i.e., the uninsured fire loss and the need to pay additional interest under the amended land contract) are time barred.

¶23 We turn next to the Mossutos' remaining claims that payments intended for insurance premiums and property taxes under the amended land contract were misapplied as credits to the outstanding amount of principal and interest that the Mossutos owed. We conclude that, regardless of whether some of the more recent alleged misapplications occurred within an applicable statutory limitation period, these claims fail to state a claim upon which relief could be granted.

¶24 The Mossutos do not dispute that they would need to prove actual harm in order to recover damages on their claims that payments were misapplied. They have not, however, identified any specific harm that was caused by having payments intended for insurance premiums or property taxes under the amended land contract instead applied to principal and interest. In particular, the Mossutos do not allege that they suffered any additional uninsured losses or any seizure of the property based upon unpaid property taxes while the amended land contract was in effect. Moreover, applying the Mossutos' payments entirely to their outstanding principal and interest reduced the amount of additional interest that the Mossutos owed, to their benefit.

¶25 At points in their brief, the Mossutos appear to argue that the harm they suffered from the alleged misapplication of payments under the amended land contract included the uninsured fire loss and the need to enter into the amended land contract. Any such assertion is absurd on its face. Causation does not run backwards. We therefore conclude that the circuit court also properly dismissed

any claims related to misapplied payments under the amended land contract that were not otherwise barred by statutes of limitation.

¶26    Finally, the Mossutos contend that there are material facts in dispute as to whether they were in default on the amended land contract. We note that strict foreclosure is an equitable remedy under which a land contract vendor may forgo the right to collect the amount remaining on the debt and instead recover the property. *See Steiner v. Wisconsin Am. Mut. Ins.*, 2005 WI 72, ¶¶25-26, 281 Wis. 2d 395, 697 N.W.2d 452. Therefore, the actual amount by which the Mossutos were in arrears is not essential to the default determination—only whether or not the Mossutos had been in arrears by any amount for more than 30 days.[2]

¶27    There is no factual dispute that William Mossuto paid CRS Properties $7,000 between July 1, 2013, and December 31, 2014. Under the terms of the original land contract (which required monthly payments of $635 toward principal and interest and $65 toward insurance and property taxes), $11,430 was due for principal and interest and $1,170 was due for insurance and property taxes during that 18-month period. It is further undisputed that the Mossutos paid CRS Properties $55,830 between January 1, 2015, and August 1, 2021. Under the terms of the amended land contract (which required monthly payments of $800 toward principal and interest and $50 toward insurance and property taxes), $64,000 was due for principal and interest and $4,000 was due for insurance and property taxes during that 80-month period. Thus, without even taking into account what additional interest may have accrued due to late payments, the Mossutos were plainly in arrears on their principal and interest payments by August 1, 2021.

---

[2] The amount of the arrears would be relevant to determining the redemption amount, but the Mossutos have not challenged that determination on appeal.

¶28     To the extent that the parties disagree about who was required to pay the insurance premiums and property taxes; what, if any, portion of the inadequate payments the Mossutos made should have been applied to insurance premiums and property taxes; or how much CRS Properties actually paid for insurance premiums or property taxes while the amended land contract was in effect, those factual disputes are all immaterial to the default determination.  There is no potential resolution to any of those questions that would change the fact that the Mossutos failed to make sufficient payments to cover the principal and interest due.  In fact, if CRS Properties had applied more of the Mossutos' payments to insurance and property taxes as the Mossutos contend it should have done, the Mossutos would be even further in arrears on their principal and interest.

¶29     Given that it is further undisputed that the Mossutos did not make any additional payments after August 1, 2021, their delinquency had indisputably continued for more than 30 days by the time this action was filed on May 26, 2022. Accordingly, the circuit court properly determined that the Mossutos were in default of the terms of the amended land contract and that CRS Properties was entitled to strict foreclosure.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.